## WILLIAM PERRY *vs.* NATHAN HAYWARD.

A sheriff's deed of an equity of redemption under Rev. Sts. *c.* 73, § 37, conveys no interest in the estate if there is no mortgage existing on the property at the time of the sale.

The purchaser of an equity of redemption sold under Rev. Sts. *c.* 73, § 37, cannot set aside a deed from the mortgagor to the demandant, as fraudulent against creditors, if the demandant had also redeemed the mortgage and taken a re lease from the mortgagee prior to the levy of the execution.

THIS was a real action, in which both parties claimed title under Dr. Nathan Perry, father of the demandant. At the trial before *Shaw*, C. J., it appeared that in May, 1847, said Nathan Perry, then owning the premises, conveyed them to Dr. Ebenezer Alden, who simultaneously executed a bond to reconvey the same, upon performance of certain conditions therein named. This bond was duly acknowledged and recorded; and on the 27th of the same month said Nathan Perry assigned all his interest therein to the demandant; and in January, 1849, he also quitclaimed the premises to the de-

mandant, covenanting against the claims of all persons under him. In June, 1850, said Alden also quitclaimed all his interest in the premises to the demandant, the consideration therefor being the payment by said William of the balance due said Alden from said Nathan Perry.

The counsel for the tenant then stated the following grounds of defence, viz: that the assignment of the bond in 1847, and the quitclaim deed in 1849, from Nathan Perry to the demandant, were fraudulent and without consideration, made to defeat and defraud the creditors of said Nathan, of whom William Perry, of Exeter, New Hampshire, was then one; and that said William Perry, of Exeter, on the 20th of June, 1851, attached on his said claim, all said Nathan Perry's real estate, and recovered judgment therein by default in August following, upon which judgment an execution issued September 15, 1851. Seizure of all of said Nathan's interest in said premises was made the same day, as an equity of redemption, which was sold as such by the officer, in the manner prescribed by Rev. Sts. *c*. 73, § 37, for the sale on execution of an equity of redemption, and a deed thereof was given by the officer to the tenant, dated October 15, 1851. This was the only title the tenant relied upon, and it was conceded that, up to, and at the time of the commencement of the action of William Perry, of Exeter, against said Nathan, the demandant was in possession under the prior conveyances from said Nathan and Dr. Alden.

Upon this statement of the case, and upon other facts not material to report, the demandant asked the court to rule that the validity of his title was not open to the tenant, claiming only as a purchaser of an equity of redemption in 1851, after the supposed mortgage to Alden had been redeemed by the demandant. The presiding judge so ruled, and drew up a report of the case, which, after reciting the foregoing facts, proceeded thus: " The question is, whether the levy of the execution relied on by the tenant, by a seizure and sale of the equity of redemption, and the purchase thereof at auction by the tenant, with the officer's deed, was sufficient to constitute a good title to the tenant, upon his showing that the

assignment of the bond of defeasance, and the subsequent quitclaim deed of the premises from the father to the son, were made without adequate consideration, and so might be found fraudulent, as against the creditors of Nathan Perry. I was of the opinion that he could not, and that if any judgment creditor of Nathan Perry would impeach and avoid the conveyances of Nathan Perry to William, he should have levied his execution on the estate, and set it off by appraisement, as an absolute estate, and that the sale at auction of the supposed equity of redemption was void. Assuming that the deed from Nathan Perry to Ebenezer Alden, together with the bond back from Alden to Perry, was a mortgage, leaving an equity of redemption in Nathan Perry, then the assignment of this bond of defeasance of the 27th of May, 1847, and the quitclaim deed of the 10th of January, 1849, from Nathan to William Perry, operated *primâ facie* as a transfer of the equity of redemption to William Perry, and vested the estate in him, subject to the mortgage to Alden; and the subsequent payment of the debt to Alden, and his release and discharge of the mortgage on the 27th of June, 1850, put an end to the equity of redemption, and left an absolute estate in the premises. If the assignment of the bond of defeasance, and the quitclaim deed of the premises given by Nathan to William Perry, though good as between the parties, was void as against the creditors of Nathan Perry, and the judgment creditor in the suit on which the execution issued was a creditor of Nathan Perry, entitled to avoid his conveyance to William Perry, then, at the time of the levy, the estate was an absolute estate discharged of the mortgage, and should have been specifically set off by appraisement; that the sale of the equity at auction, under which the tenant purchased was void, and that he took no title under it.

" It was conceded that William Perry was in possession of the premises prior to and at the time the action of William Perry, of Exeter, was commenced. Being thus in possession, under the assignment of the bond of defeasance, the quitclaim deed of his father, the redemption from Alden, and his release and quitclaim, the demandant has a good *primâ facie* title

against the tenant, if his purchase of the equity of redemption at the sheriff's sale was not valid in law. Although a judgment creditor of Nathan Perry might have impeached and avoided the conveyance from Nathan to William Perry, as one made without consideration, fraudulent and void, by a proper levy of execution, yet that the tenant cannot raise that question, and that any evidence bearing upon it is immaterial to the present issue. Whereupon, a verdict was taken by consent for the demandant, subject to the opinion of the whole court.

" If the court should be of opinion that the tenant has a right to go into proof that the conveyances of Nathan to William Perry were made without consideration, and with an intent to defraud the creditors of Nathan Perry, and that the proof of that fact would have been a good defence, the verdict is to be set aside, and the case stand for trial; otherwise, judgment to be entered on the verdict for the demandant."

*T. G. Coffin,* for the tenant. The questions presented for the consideration of the court are these :

1. Could Hayward impeach the demandant's title by showing that it was acquired by fraud and collusion, between him and his grantor, to defeat creditors, Hayward's grantor being a creditor of the demandant's grantor ?

2. Were the conveyances by which the demandant acquired his paper title, made and received by the demandant in trust for his father, the judgment debtor ?

The execution creditor seized the equity of redemption and sold it, to satisfy his execution against Nathan Perry, the demandant's grantor; and the question presented is, can Hayward, who was the purchaser of the equity, question the title of the demandant for either of the causes which he suggests ? Assuming that, as between Nathan Perry and William Perry, the conveyance was fraudulent, we say nothing passed by the conveyance to William, except an estate in trust for his father And the tenant claims it was open to him to show that fact. *Clapp* v. *Tirrell,* 20 Pick. 247.

3. If the conveyances from Nathan Perry were fraudulent, with a view to defraud creditors, they were a mere nullity

Such a conveyance was fraudulent from the beginning. *Colville* v. *Parker*, Cro. Jac. 158. *St.* of Eliz. *c.* 5, relating to frauds against creditors, directs that "no act whatever, done to defraud creditors, shall be of any effect against such creditors." A conveyance to a trustee, for the purpose and benefit of the debtor, is a fraud. *Taylor* v. *Jones*, 2 Atk. 600.

*J. H. Clifford & E. Ames*, for the demandant. 1. Assuming that Dr. Alden was a mortgagee, then the payment of the balance of the mortgage debt by the demandant, and the deed of release of Dr. Alden, of the 27th of June, 1850, to the demandant, operated as a release and discharge of Dr. Alden's mortgage, and so the estate then became absolute in the demandant. *Wade* v. *Howard*, 11 Pick. 289; 6 Pick. 492; *Loud* v. *Lane*, 8 Met. 517.

2. If Dr. Alden was not a mortgagee, it is clear that there was no equity of redemption existing, upon which a valid levy of an execution could be made.

SHAW, C. J. The whole court, after argument, are of opinion that the instructions and direction proposed to be given at Nisi Prius, in this case, were correct, and that any evidence tending to show that the conveyances of Nathan Perry to his son William were without consideration and void as against the creditors of Nathan, would have been immaterial, because the tenant was not a creditor, and had no such conveyance under a creditor of Nathan Perry as would give him any title.

In the present case, we think both parties must assume that the deed from Nathan Perry to Alden, together with a simultaneous bond of Alden to Perry, to reconvey on a condition, constituted a mortgage; that the bond was strictly a bond of defeasance, and rendered the conveyance a defeasible one, which is the definition of a mortgage. The tenant must assume this, because otherwise Nathan Perry never made any mortgage to Alden; he had no equity of redemption; William Perry of Exeter, as a creditor of Nathan, could seize and sell no equity of redemption; and the officer's deed to the tenant was simply a nullity. Supposing these documents together constituted a mortgage, and left an equity of redemption in Nathan, that equity was an assignable interest; it was the

estate subject to the mortgage, and the assignment of the bond of defeasance, and afterwards his transfer of the estate by deed of quitclaim, vested the estate in the son, subject to the mortgage. The subsequent payment by William Perry, the demandant, to Alden, of the balance due him on his mortgage, and his release, made the estate absolute in Perry; and this occurred in June, 1850, nearly a year before the sale of the equity, in 1851, under which, and the officer's deed made in pursuance of such deed, the tenant claims title.

But, says the tenant, these conveyances of Nathan Perry to his son were made without any consideration, and so were fraudulent and void as against creditors; William Perry, of Exeter, was an execution creditor of Nathan, and had a right to avoid the voluntary and fraudulent conveyances of his debtor by taking the estate; the sheriff was an officer of the law, authorized to take the property so fraudulently conveyed, and sell it in the mode prescribed by law, execute a deed to the highest bidder, and that deed will give a good title to the purchaser.

Supposing this to be substantially a correct view of the law of debtor and creditor, the question still recurs, how can the property thus conveyed without consideration be appropriated and made available by a creditor for the satisfaction of his debt? If the property be real estate, if it be absolute, and not a right to redeem, it must be set off at the appraisal of men, in the manner provided by law, from the debtor to the creditor, and taken and held by the latter in satisfaction of his debt. In the case of an equity of redemption, where the estate is subject to one or more mortgages, by statute, the execution creditor, by the proper officer, is authorized to cause such equity of redemption to be taken on the execution, and advertised and sold by the officer. The reason is very obvious; the estate may be mortgaged for only a small part of its value, or nearly or quite to its whole value, and such a sale will enable a creditor to avail himself of the difference, if there be any, between the value of the land and the incumbrances. Setting off by metes and bounds, or by an undivided part, would be wholly inapplicable. In no other case does the law warrant

a seizure and sale of real estate on execution. In any other case, the proceeding by such seizure and sale is a perfect nullity. An officer having no title in himself, his deed, if it have any operation, must operate by way of the execution of a power. In a case warranted by law, where he acts within the scope of his authority, by selling an existing equity of redemption of the debtor on execution, he executes a statute power, and the estate passes to the purchaser by force of his deed. But if there be no such equity of redemption, he acts without authority, the statute vests in him no such power, and his deed, like that of a stranger, is a nullity. The whole proceeding is void, and the purchaser takes no title. Even if the attachment on mesne process was rightly made on the equity, if the mortgage is discharged before the execution issues, the property must be levied on as an absolute estate, and not as an equity. *Freeman* v. *M'Gaw*, 15 Pick. 82.

But it appears to us that the proper mode of regarding the attachment on mesne process is, to consider it as an attachment of the estate. Of course, it must operate according to the nature of the debtor's rights in it. If it be under mortgage, the attachment binds the equity; and if it so continues till the levy of the execution, it must be treated as an equity, and levied and sold according to law; but if, in the meantime, the mortgage has been paid and discharged, or otherwise removed, it is then an estate not subject to mortgage; it is absolute, and must be set off by metes and bounds, and by appraisement.

In the present case, it appears that whatever interest Nathan Perry had in the estate, or whatever his creditors had at the time of the attachment, in consequence of any conveyance of his, fraudulent as against them, the mortgage had been paid and discharged, and the estate had become absolute either in Nathan or William Perry, before the execution was levied, so that whatever right the execution creditor had, to make that estate available to the payment of Nathan Perry's debt to him, was a right to levy on it specifically, not to sell the supposed equity of redemption.

It was intimated and somewhat urged in the argument,

that the conveyances from Nathan Perry were absolutely void; that nothing passed to him thereby, and therefore he cannot maintain this action, whether the tenant has any title or not, because every demandant must recover upon the strength of his own title. But this argument, we think, fails in its foundation. It is not true, in legal principle, that a voluntary conveyance by a debtor, to defeat his creditors, is absolutely void; it is void only as against creditors, therefore only voidable; and creditors only can avail themselves of it, and avoid it, by treating it in the same manner as if there had been no such conveyance. As against all other persons, it is a legal conveyance, and passes the estate to the grantee. This is too familiar a principle to require authorities. It is admitted in this case that Nathan Perry was seized; that he conveyed all his title to William Perry by deed in due form of law; that William had possession under it; and the only ground taken to impeach his title is, that it was void as against creditors. If we are right in our former view, that it was not legally taken by the execution creditor of Nathan Perry, and that the sale was void, then William Perry's legal title stands unaffected by any act of any creditor of Nathan, and is therefore valid, and gives him a right to recover in this action.

*Judgment on the verdict for the demandant.*