Ralph E. WILLIAMS, as Trustee in Bankruptcy of the Estate of George F. Elliff, an individual doing business as Pine Supply Co., bankrupt, and Pearl K. Lannin, Appellants,

v.

TWIN CITY COMPANY, Twin City Lumber Co., John W. Hunter, Franklin Supply Corporation, Southwest Management Corp., H. A. Collins, and William R. Ramsay, Appellees.

No. 15201.

United States Court of Appeals Ninth Circuit.

Jan. 6, 1958.

Robert N. Jacobs, C. Huntington Jacobs, Daniel R. Cowans, San Jose, Cal., for appellants.

Shapro & Rothschild, Daniel Aronson, Jr., San Francisco, Cal., for appellees.

Before HEALY, CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal from a judgment for defendants on three counts of a four count complaint by which the trustee in bankruptcy sought to set aside a note and trust agreement of the debtor as a fraud on creditors under 11 U.S.C.A. § 107.

sub. d, to recover certain payments as preferences, and to recover damages. The district court found for the trustee on certain payments as a preference (count three), but refused to set aside other payments on the ground the defendants were secured creditors within the meaning of 11 U.S.C.A. § 1(28). The court also refused to set aside the transaction attacked, finding "that neither the Promissory Note nor the Trust Agreement * * * were nor are fraudulent as against the creditors [1] of * * * Elliff * * * under Section 67(d) (11 U.S.C.A. § 107(d)) of the Bankruptcy Act or under any other applicable statute of the State of California." [2]

Elliff, the debtor, was engaged in the retail lumber business in San Jose. In May, 1953, Elliff's stock in trade was warehoused and the defendants, who had sold the stock in trade to Elliff, were given warehouse receipts as security for debts then owed them. This "May Agreement" [3] by which defendants controlled Elliff's stock was terminable at will by either party. Shortly thereafter, upon further default and receipt by defendants of worthless checks from Elliff, the defendants terminated the "May Agreement" and informed Elliff that new arrangements would have to be made or he would be closed down. The "October transaction" here attacked resulted. By this agreement, Elliff transferred all his stock and present and future accounts receivable to a trustee, with Pearl Lannin, Elliff's mother-in-law, as beneficiary. Elliff executed a note for the amount owed defendants ($28,000), which note was guaranteed by Mrs. Lannin. In return for this guaranteed note defendants transferred their warehouse receipts to Mrs. Lannin, whereby she secured her guarantee. The trust agreement provided for Elliff's utilization of the income in his business, but required that 20% of all income be set aside for payment to defendants on their note. Elliff insisted that the note and trust agreement be kept secret so as to prevent panic among his other creditors. Apparently defendants' representative was aware of this wish of the debtor, but did not participate in that decision. The evidence indicates and the trial court apparently found that Mrs. Lannin knew nothing of the details of the transaction and believed she was merely lending, by her guarantee, a large sum to her son-in-law for use in his business.

Elliff subsequently made some payments on the note, which were allowed by the court below to stand; and some payments on a later "open account" which were set aside by the court below as preferences. In July, 1954, Elliff went into bankruptcy on petition of other creditors.

1. Conclusions of Law, ¶ II, Tr. p. 63.

2. 11 U.S.C.A. § 107, sub. d, provides in applicable part, in substance:

"(1) For the purpose of and exclusively applicable to, this subdivision: * * * (e) consideration given for the property or obligation of a debtor is 'fair' (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, or (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained.

"(2).—All transfers and obligations incurred by a debtor are fraudulent (a) as to existing creditors if made without fair consideration and the debtor is or will be made insolvent thereby, regardless of actual intent; (b) as to existing and subsequent creditors, if made without fair consideration and the debtor's remaining property is unreasonably small capital with which to do business, regardless of actual intent; (d) as to existing and future creditors, if made with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud creditors." [Emphasis added.] Cal.Civ.Code, §§ 3439.07, 3439.05, 3439.-04 contain similar provisions as part of the Uniform Fraudulent Conveyances Act.

3. "May Agreement" or "transaction" and "October Agreement" or "transaction" are terms used by both parties in their respective briefs to describe the two transactions revealed by the record. We adopt that use herein.

In summary bankruptcy proceedings against Mrs. Lannin, to which defendants were originally named, but from which they were dismissed on jurisdictional grounds, the note and trust agreement were declared null and void as against the trustee in bankruptcy, and it was determined that Mrs. Lannin had no interest in the stock in trade or accounts receivable of Elliff. The proceeding in the court below sought the same determination against defendants for the purpose of avoiding the note.

Mrs. Lannin cross-complained against defendants for damages but was denied recovery. She has appealed. What is here said concerning the companion appeal is dispositive of hers.

The trustee, in Count IV of the complaint, claimed damages. This was denied and was specified as error on appeal. No argument is made relative to this claim in the briefs.

In essence, it is appellants' position that the device used here is merely another ingenious method devised by a debtor to forestall financial disaster; and that such is "fraudulent" in the bankruptcy, as distinguished from the criminal, sense; and therefore barred by 11 U.S.C.A. § 107, sub. d.

Although the attack by appellants in their brief is on the note, it is actually premised on the "fraudulent transaction" of which the note is but a part, i. e., that there was a single transaction, and even though the note be valid, it should be set aside as an integral part of the entire fraudulent transaction.[4]

■ The essence of this transaction was the *transfer* of existing assets to the trust, and the *obligation* Elliff incurred to transfer future accounts receivable to the trust. 11 U.S.C.A. § 1(30) defines a transfer to include indirect dispositions and certainly a transfer in trust so qualifies.

■ We should first note that 11 U.S. C.A. § 107, sub. d(2) defining what constitutes a fraudulent transfer and to whom it is fraudulent when there exists no actual intent to defraud (i. e., as defined in subdivisions a and b as distinguished from subdivision d) is written in the conjunctive. Both the insolvency *and* the lack of fair consideration must exist to make subdivision a applicable, and both the remaining unreasonably small capital *and* the lack of fair consideration must exist to make subdivision b applicable. Hence, if we assume there is lacking an actual intent to hinder, delay, or defraud, the question of fair consideration controls the applicability of either subdivision a or b.

■ Consideration for the execution of the note by Elliff was the release to Mrs. Lannin by the defendants of the warehouse receipts. The direct consideration did not run from the creditors to Elliff, but it is not essential that it do so. Consideration can run to a third party, so long as it is given in exchange for the promise sought to be enforced. This was done here. There was indirect benefit to Elliff by giving him a further chance to avoid bankruptcy—further time. 11 U.S.C.A. § 107, sub. d(1)(e), in defining fair consideration, merely requires a transfer, not a transfer to the debtor. We agree with the trial court that there was consideration.

If we assume a fair consideration, it is not necessary for us to determine whether the remaining essentials (insolvency for subdivision a, and an unreasonably small capital for subdivision b), exist.

■ On the question of actual intent to hinder, delay or defraud (11 U.S.C.A. § 107, sub. d(2)(d)), we are bound by the findings below (Fed.Rules Civ.Proc. 52(a), 28 U.S.C.A.), as we cannot say they were clearly erroneous. Appellant stresses the evidence of the debtor's requirement of secrecy as to the transfer. But the trial court specifically deter-

4. In oral argument it was stated by appellants' counsel that neither "the ex-

change itself, nor the note itself" (the October transaction) created a preference.

**682**

mined this was not done with "intent to hinder, delay or defraud" creditors.[5] Again no clear error exists.

The judgment of the District Court is affirmed.

5. Finding of Fact XI which found paragraph XVI of plaintiffs' complaint untrue.