In the Matter of Desert View Building Supplies, Inc., Bankrupt.

WELLS FARGO BANK, a National Banking ·Association, Plaintiff,

v.

DESERT VIEW BUILDING SUPPLIES, INC., and Berkeley Bunker, Receiver, Defendants,

Official Creditors Committee, Intervenors.

No. LV 76–785.

United States District Court, D. Nevada.

Aug. 31, 1978.

Gerald M. Gordon, Las Vegas, Nev., for plaintiff.

Neil J. Beller, Las Vegas, Nev., for defendant.

Robert Clive Jones, Las Vegas, Nev., for Receiver Bunker.

Robert M. Yaspan, Los Angeles, Cal., George H. Sykulski, Beverly Hills, Cal., for Official Creditors Committee.

OPINION

ROGER D. FOLEY, Chief Judge.

This action centers around a transaction entered into between Prosher Corporation

(Prosher), Desert View Building Supplies, Inc. (Desert View), the herein bankrupt, and Wells Fargo Bank (Wells Fargo). This case is presently before this Court on Wells Fargo's appeal from a decision of the bankruptcy court which found that the transaction was fraudulent as to the unsecured creditors of Desert View. In addition, the trustee for Desert View and the Official Creditors Committee (Creditors Committee), an intervenor, has petitioned this Court for reconsideration of this Court's order dismissing their cross appeal. For the reasons set forth below, it is the conclusion of this Court that the decision of the bankruptcy court be affirmed. Further, the motion for reconsideration filed by the trustee of Desert View and the Creditors Committee shall be denied.

Wells Fargo commenced this action by requesting the bankruptcy court to modify a Rule 11–44 stay so as to allow Wells Fargo to enforce a writ of possession obtained upon the foreclosure of a security interest on property which comprised the bankruptcy estate of Desert View. Wells Fargo also requested that the bankruptcy court issue an order directing the receiver to surrender to Wells Fargo certain property of Desert View's which Wells Fargo claimed was collateral of a security agreement. After a trial was held on February 23, 1977, and May 2, 1977, an opinion of the bankruptcy court was filed on August 16, 1977, which denied relief to Wells Fargo and subordinated its claim to that of the other creditors. A judgment was entered on September 27, 1977, and vacated on October 4, 1977. Thereafter, a supplemental opinion was filed on December 29, 1977, and in accordance therewith a judgment entered and filed on January 30, 1978, wherein the transaction between Wells Fargo, Prosher, and Desert View was found to violate a provision of the Fraudulent Con-

veyance Act, NRS 112.060, and as such Wells Fargo was held to be an unsecured creditor entitled to share equally with all other unsecured creditors in the distribution of the bankruptcy estate. Notice of entry of this judgment was filed February 1, 1978, and notice of this appeal was perfected on February 3, 1978. The trustee for Desert View and the Creditors Committee filed a notice of cross appeal on February 21, 1978.

On March 7, 1978, Wells Fargo filed a motion to dismiss the cross appeal of the trustee of Desert View and Creditors Committee. Local Rule 16(c) provides:

"An opposing party, unless otherwise ordered by the court, shall have 15 days after service of the moving party's points and authorities within which to serve and file a memorandum of points and authorities in opposition to the motion."

In addition, Local Rule 16(e) states:

"A failure of a moving party to file a memorandum of points and authorities in support of the motion shall constitute a consent to the denial of the motion; a failure of an opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute a consent to the granting of the motion."

As such, on April 7, 1978, having received no memorandum of points and authorities in opposition to Wells Fargo's motion to dismiss the cross appeal, this Court granted said motion.

On April 20, 1978, the trustee for Desert View and the Creditors Committee filed a motion for reconsideration of this Court's order of dismissal. Counsel for the trustee of Desert View and the Creditors Committee has offered no explanation for the failure to timely comply with Local Rule 16(c). Therefore, the motion for reconsideration shall be denied.[1]

1. Even if counsel for the trustee of Desert View and the Creditors Committee had timely complied with Local Rule 16, it appears that the cross appeal would have been dismissed for failure to comply with Rule 801 of the Rules of Bankruptcy Procedure. Rule 801 provides in part:

"(a) Manner of Taking Appeal. An appeal from a judgment or order of a referee to a district court shall be taken by filing a notice of appeal with the referee within the time allowed by Rule 802 . . . ."

Rule 802 states in part:

"(a) Ten-Day Period. The notice of appeal shall be filed with the referee within 10 days of the date of entry of the judgment or order appealed from. If a timely notice of appeal is filed by a party, any other party may file a

Turning to the merits of the appeal, Wells Fargo contends that the bankruptcy court erred when it concluded that the loan transaction between Wells Fargo, Prosher, and Desert View was fraudulent as to the unsecured creditors of Desert View.

■ The findings of the bankruptcy court must be sustained unless found to be clearly erroneous. Bankruptcy Rule 752; *Bel Marin Driwall v. Grover*, 470 F.2d 932 (9th Cir. 1972).

In 1969, a Mr. Irving Waller owned all or substantially all of the corporate stock of Desert View. In that year, Waller sold his Desert View stock to Prosher in return for Prosher stock, thus making Desert View a wholly owned subsidiary of Prosher. At some point in time prior to November 13, 1975, the Desert View stock, as owned by Prosher, was pledged to Wells Fargo as collateral for a loan from Wells Fargo to Prosher. Subsequently, Prosher defaulted on its loan from Wells Fargo and, as part of a refinancing agreement, the Desert View stock, held as collateral by Wells Fargo, was returned to Prosher in exchange for an agreement by Desert View to take out a secured loan in the amount of $250,000. The proceeds of that loan went, first, to Prosher in the form of a dividend and, then, to Wells Fargo as partial payment of Prosher's debt. This entire transaction occurred on November 13, 1975. In connection with the refinancing agreement, Prosher transferred 100,000 shares of its stock to Wells Fargo.

The unaudited financial statement of Desert View as of December 31, 1974, indicated that Desert View had retained earnings of $280,000 and a total stockholders' equity of $386,000. Included as an asset of the December 31, 1974, statement was a $44,000 note receivable from Howard Homes which had been due or owing since 1972 or 1973 and concerning which payments had not been received since 1973. Also included on the December 31, 1974, statement was a $15,000 account receivable from Coronado Construction Company on which there had been no payment since mid-1974. All accounts were delinquent as of December 31, 1974.

As a result of the refinancing agreement between Prosher and Wells Fargo, Prosher's debt was reduced substantially, while Desert View's total liabilities were nearly doubled. The unaudited financial statement issued on December 31, 1975, reveals that Desert View was then running a retained earnings deficit of $47,929.00 with total stockholders' equity listed at $57,804 above solvency. This statement again counted as assets the Howard Homes note receivable and the Coronado Construction Company account receivable even though no payment had been received for over 18 months.

In February 1976, Waller regained ownership of Desert View. By mid-1976, total stockholder equity stood at $32,058. The company was undergoing serious cash flow problems with some $1,100 in cash on hand. The cash flow problems began in February 1976.

notice of appeal within 10 days of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires.
".  .  .
"(c) Extension of Time for Appeal. The referee may extend the time for filing a notice of appeal by any party for a period not to exceed 20 days from the expiration of the time otherwise prescribed by this rule. A request to extend the time for filing a notice of appeal must be made before such time has expired, except that a request made after the expiration of such time may be granted upon a showing of excusable neglect if the judg-

ment or order does not authorize a sale of any property."
As previously mentioned, the bankruptcy court entered its judgment on January 30, 1978. Notice of appeal was filed by Wells Fargo on February 3, 1978. The notice of cross appeal was not filed until February 21, 1978. No extensions of time were granted to the trustee of Desert View and the Creditors Committee by the bankruptcy court. Failure to timely file a notice of appeal is fatal to said appeal. *In Re Great Western Ranches, Inc.*, 511 F.2d 1021 (9th Cir. 1975).

On October 18, 1976, Desert View was clearly insolvent. A financial statement of that date revealed an equity deficit of Desert View in the amount of $212,029. The Howard Homes note and the Coronado Construction Company accounts receivable were not considered as assets on this statement.

On November 29, 1976, Wells Fargo issued a notice of acceleration pursuant to a provision contained in the loan agreement. On December 6, 1976, Desert View filed an original petition under Chapter XI of the Bankruptcy Act.

█ The bankruptcy court held the November 13, 1975, loan agreement was made without fair consideration to Desert View and as a result thereof Desert View was left with an unreasonably small capital after the transaction, all in violation of NRS 112.060, a provision of the Fraudulent Conveyance Act. NRS 112.060, which is incorporated into the Bankruptcy Act by Bankruptcy Act § 70(e), provides:

"Every conveyance *made without fair consideration* when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance *is an unreasonably small capital* is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent." (Emphasis added.)

The primary intent of this statute is to prevent an under-capitalized company from being thrust into the market place to attract unwary creditors to inevitable loss while one or more preferred creditors are provided relative safety of a security interest in the company's assets.

*The bankruptcy court did not err in finding that the $250,000 loan transaction was made without fair consideration.*

█ Bankruptcy Act § 67(d) defines "fair consideration" as follows:

"(d)(1)(e) consideration given for the property or obligation of a debtor is 'fair' (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, or (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained."

The language of § 67(d) is similar to NRS 112.040.[2] In holding that the primary benefit of the loan transaction went to parties other than Desert View, the bankruptcy court stated:

"However much Prosher might have been strengthened by the transaction, it is apparent that Desert View did not receive any concomitant benefit. Just the opposite, it was immediately released on its own with a debt which had taken it to the brink of insolvency without the superior assets of the parent company to aid it in sustaining the added economic burden brought about by that debt . . .

"Also, with regard to the fairness of consideration, there appears to be a question of a lack of good faith on the part of Wells Fargo Bank as the transferee. 'Good faith,' in the fraudulent conveyance context, has generally been defined as carrying with it 'the earmarks of an arms-length bargain.' (cases omitted) While there has been no conclusive showing of an actual intent to defraud other creditors, it is apparent that Wells Fargo Bank did use its influence with Desert View through Prosher to attain an enhanced position as a secured creditor. The lack of adequate consideration to Desert View, coupled with this undue in-

---

**2.** NRS 112.040 provides:
"Fair consideration is given for property, or obligation,
1. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

2. When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained."

fluence, does constitute a failure by Wells Fargo Bank to operate in good faith toward the Debtor and its other creditors." (Bankruptcy court opinion, page 13.)

Wells Fargo argues, citing *Williams v. Twin City Co.*, 251 F.2d 678 (9th Cir. 1958), the bankruptcy court's conclusion that there was not fair consideration is erroneous because sufficient indirect consideration existed in that Desert View was given a further chance to avoid bankruptcy. The bankruptcy court, however, correctly distinguished the *Williams* case on the ground that, while in the *Williams* case there was an indirect benefit to the transferor in that the transaction gave him a further chance to avoid bankruptcy, in the instant case no such benefit existed. Rather, the converse occurred: Desert View was pushed toward bankruptcy by the added Wells Fargo liability.

*The bankruptcy court did not err in finding that the $250,000 loan transaction left Desert View with an unreasonably small capital with which to operate its business.*

The degree of corporate undercapitalization is a question of fact that must be ascertained on a case by case basis. The bankruptcy court found that Desert View was left with an unreasonably small capital with which to operate its business, relying on an analysis presented in *U. S. v. 58th Street Plaza Theatre, Inc.*, 287 F.Supp. 475 (S.D.N.Y.1968). In *Plaza Theatre*, the Court looked to the probability, as of the date of transfer, that certain tax claims, then being judicially determined, would turn out to be valid, and thus voided a transfer which would have left the debtor with insufficient funds to pay those claims if they were approved.

Wells Fargo contends that Desert View was not inadequately capitalized because it was able to continue the operations of its business at the same yearly gross. Wells Fargo argues that Desert View did not incur difficulty in obtaining merchandise at a fair price, or of obtaining credit from its trade creditors. In rejecting these contentions, the bankruptcy court relied on the testimonies of a Mr. Robert Estee, a loan officer of Wells Fargo, and Irving Waller to the effect that the amount of cash which Desert View had on hand was "low" or "extremely low" for a business of its size. In examining the impact which the loan agreement had on Desert View's ability to operate its business, the bankruptcy court correctly noted the loan agreement took a company which, though marginal in its net income, had accumulated some $280,000 in retained earnings as of December 31, 1974, and placed it in a situation where it had little working capital at a time when it needed to expand its sales in order to repay a loan from which it derived little or no benefit. As such, the decision of the bankruptcy court shall be affirmed.