In re Jacob F. BUTCHER, a/k/a Jake F. Butcher and Jake Butcher, Debtor.

In re Sonya W. BUTCHER, Debtor.

John H. BAILEY, Trustee, Plaintiff,

v.

COMMERCE FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.

Nos. 3–83–01036, 3–83–01422.
Adv. No. 3–84–0203.

United States Bankruptcy Court, E.D. Tennessee.

June 27, 1985.

**62**

Bass, Berry & Sims, Wallace W. Dietz, Nashville, Tenn., for plaintiff.

W.F. Shumate, Jr., Knoxville, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether the debtor's conveyance of mortgages on two condominium units constitutes an avoidable fraudulent transfer under 11 U.S.C.A. § 548(a)(2) (West 1979).

### I

An involuntary chapter 7 case was commenced against the debtor on June 29, 1983. The plaintiff trustee seeks in this adversary proceeding [1] to avoid as a fraudulent transfer under § 548(a)(2) the debtor's conveyance to defendant of a mortgage interest in two condominium units. Trial of this matter occurred on March 12, 1985.

In order to streamline and clarify its findings regarding the somewhat convoluted facts involved in this action, the court has prepared the following schematic summary of the relevant transactions:

---

1. On April 30, 1984, the debtor's trustee in bankruptcy filed an "Application for Determination of Secured Status of Commerce Savings & Loan Association, Inc. in Sailfish Point Condominiums." On June 7, 1984, this court ordered that the matter initiated by the trustee's application should proceed as an adversary proceeding. Accordingly, the court ordered the trustee's application to be deemed a complaint and the response by Commerce to be deemed an answer.

------------------ Revoked transfers

_____ Completed, final transfers

As illustrated, on December 15, 1982, the debtor and his wife, Sonya W. Butcher owned condominium unit 316 at Sailfish Point in Stuart, Florida. Hal Y. Roe, a business associate of the debtor, held title to condominium unit 413, also located at Sailfish Point. On that date the Butchers and Roe executed warranty deeds conveying the two units to Southern Natural Resources (SNR), a partnership composed of two corporate partners, Southern Resources, Inc. and La Coquille Investment Company, Inc.

On December 29, 1982, SNR executed a promissory note for $800,000 to defendant along with mortgages on units 316 and 413 securing the debt. According to the testimony of J. Michael Winchester, an associate attorney at that time in the law firm of

Ridenour, Ridenour, Ridenour, Bowers, Shumate & Lacy, the Ridenour firm acted as counsel for both the debtor and the defendant in the course of these transactions.

On December 29, 1982, the same day as SNR executed the note and mortgages to defendant, defendant disbursed $526,927.06 into the trust account of the Ridenour firm. On the same day the Ridenour firm wrote a check out of the trust account for that amount to SNR. Subsequently, on January 19, 1983, defendant disbursed the remainder of the $800,000 loan, i.e. $273,-072.94, also to the Ridenour trust account. The following day, on January 20, 1983, the Ridenour firm wrote a check out of the trust account for $253,072.94 to SNR. (The $20,000 difference between the

amount received by the Ridenour firm and that disbursed to SNR was applied to closing costs.)

Subsequently, however, the parties learned that the Sailfish Point condominium owners' association would not approve SNR as a property owner in the community. According to Paul Bostic, an employee of defendant, the parties learned of this development in January or February of 1983, after defendant had already disbursed the $800,000 in loan proceeds to the Ridenour firm. Since SNR's application for membership was denied by the owners' association it was apparent that defendant would be unable to rely upon SNR's ownership of the units and the mortgages on the units to secure SNR's promissory note to defendant. Since the deeds from Roe and the Butchers to SNR were expressly subject to applicable restrictions imposed by the owner's association the parties did not complete and record these transfers.

Instead, on March 18, 1983, the Butchers themselves executed mortgages on both units to defendant along with a promissory note for $800,000. (On the same day Roe deeded unit 413 to the Butchers.)

Plaintiff contends that the debtor conveyed the mortgages and note to defendant without receiving reasonably equivalent value in return. Defendant maintains that debtor benefited from the disbursement of the loan proceeds to SNR.

Defendant contends that debtor owed a debt to SNR equal to or exceeding $800,000 and that debtor benefited by obtaining the cancellation of his debt to SNR when he gave the note and mortgages to defendant to take the place of SNR's previous note and mortgages.

Apparently, the parties intended for defendant to endorse the SNR note over to the debtor after defendant received the debtor's note and mortgages to secure the loan. On May 3, 1983, attorney Winchester sent a memorandum to defendant requesting that defendant "[p]lease endorse the

Southern Natural Resources note without recourse to Jake F. Butcher [the debtor] and return the original to me as soon as possible." Ex. 11. According to defendant's employee, Bostic, through inadvertence this was never done.

At the time of trial the parties presented no direct testimony by the debtor respecting the existence of his debt to SNR.[2] Defendant introduced no promissory note or similar indicia of the alleged debt from debtor to SNR. At the time of trial defendant attempted to establish the existence of the debt by tendering certain handwritten memoranda of attorney Winchester made at the time of these transactions and making reference to the existence of a debt from debtor to SNR. Winchester himself testified that the precise nature of the alleged debt was not made clear to him at the time of these transactions.

However, after the trial defendant filed on May 23, 1985, a "Motion to Reopen Proof and to Admit Newly Available Evidence." Defendant's motion tendered as new evidence a copy of a plea agreement entered into by debtor on April 22, 1985, (some six weeks after trial of this adversary proceeding) in the United States District Courts for the Eastern District of Tennessee, the Western District of Tennessee, and the Eastern District of Kentucky. This court has granted defendant's motion to reopen the proof.

In paragraph 1 of the plea agreement the debtor agreed to enter "a plea of guilty (not an *Alford*, and not a nolo contendere plea)" to, among other, Count 14 in Indictment No. 84–28 in the Eastern District of Kentucky. Count 14 charged:

That on or about the August 6, 1982 in Pulaski County, in the Eastern District of Kentucky, and elsewhere, the defendant

JAKE BUTCHER

being an officer, that is Chairman of the Board, of the Somerset Bank [i.e. United

2. The debtor has been the subject of certain criminal indictments, some relating to banking

transactions involving SNR.

American Bank of Kentucky], and aided and abetted by the defendant

JESSE BARR

with the intent to injure and defraud the Somerset Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, did willfully and knowingly misapply and cause to be misapplied monies and funds belonging to the Somerset Bank and intrusted to the custody and care of said bank, in an amount in excess of $100.00 by causing the Somerset Bank to make a loan in the amount of $750,000.00 to Southern Resources, Inc., which borrower was later designated to be Southern Natural Resources Co., whereas the proceeds of said loan were applied to the use and benefit of the defendant JAKE BUTCHER, and of persons and entities other than the alleged borrower Southern Resources, Inc./Southern Natural Resources Co., all in violation of Title 18, United States Code, Sections 656 and 2.

## II

The relevant provision of the Bankruptcy Code provides:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

> .     .     .     .     .

> (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insol-

vent as a result of such transfer or obligation. . . .

11 U.S.C.A. § 548(a)(2) (West 1979).

■ In an action to set aside a conveyance under § 548 the trustee has the burden of proof to establish that the conveyance was made under conditions that bring it within § 548.[3] 4 *Collier on Bankruptcy* ¶ 548.10 (15th ed. 1985). Although that burden does not shift, the burden of going forward with the evidence to rebut a prima facie case may shift. *Id.*

■ Under these facts the court is here persuaded that plaintiff has failed to carry the burden of proof to establish that debtor conveyed the promissory note and mortgage on March 18, 1983, without receiving reasonably equivalent value in exchange. Indisputably, the proceeds of the $800,000 loan by defendant went, not to the debtor, but to a third party, SNR. However, defendant has met its burden of going forward with the evidence to demonstrate the debtor's receipt of reasonably equivalent value in exchange for his note and mortgage.[4]

Even though the consideration for the debtor's conveyance of the note and mortgage (i.e. the $800,000 in loan proceeds) went to a third party (SNR), the debtor received reasonably equivalent value for the conveyance to the extent that the transaction ultimately operated to discharge his own debt to that third party. In *Rubin v. Manufacturers Hanover Trust*, 661 F.2d 979 (2d Cir.1981) (decided under the former Bankruptcy Act) the court observed:

> [A] debtor may sometimes receive "fair" consideration even though the consideration given for his property or obligation goes initially to a third person. As we have recently stated, although "transfers *solely* for the benefit of third

---

**3.** Following proof respecting the debtor's insolvency, the court ruled at the trial of this matter that plaintiff had carried the burden of proof regarding the issue of debtor's insolvency on the date of the transfer.

**4.** In the absence of any hearsay objection by plaintiff to the submission of the evidence the court has not found it necessary to rule specifi-

cally on the admissibility of the plea agreement (without a copy of any final judgment) under Fed.R.Evid. 803.

The court notes that the debtor's guilty plea, subjecting the debtor as it does to such a serious degree of criminal liability, appears to possess a significant degree of reliability for purposes of evidencing a debt from the debtor to SNR.

parties do not furnish fair consideration" under § 67(d)(1)(e) [predecessor to § 548], the transaction's benefit to the debtor "need not be direct; it may come indirectly through benefit to a third person." *Klein v. Tabatchnick,* 610 F.2d 1043, 1047 (2d Cir.1979) (emphasis added). *Accord, Williams v. Twin City Co.,* 251 F.2d 678, 681 (9th Cir.1958); *McNellis v. Raymond,* 287 F.Supp. 232, 238–39 (N.D.N.Y.1968), *aff'd in relevant part,* 420 F.2d 51 (2d Cir.1970). If the consideration given to the third person has ultimately landed in the debtor's hands, or if the giving of the consideration to the third person otherwise confers an economic benefit upon the debtor, then the debtor's net worth has been preserved, and § 67(d) has been satisfied—provided, of course, that the value of the benefit received by the debtor approximates the value of the property or obligation he has given up.... [F]air consideration will often exist for a novation, where the debtor's discharge of a third person's debt also discharges his own debt to that third person, *see Barr & Creelman Mill & Plumbing Supply Co. v. Zoller,* 109 F.2d 924, 926 (2d Cir. 1940).... ... [T]he net effect of the transaction on the debtor's estate is demonstrably insignificant, for he has received, albeit indirectly, ... the discharge of a debt worth approximately as much as the property he has given up or the obligation he has incurred. Thus, although these "indirect benefit" cases frequently speak as though an "identity of [economic] interest" between the debtor and the third person sufficed to establish fair consideration, *see, e.g., McNellis v. Raymond, supra,* 287 F.Supp. at 238; *In re Winslow Plumbing, Heating & Contracting Co.,* 424 F.Supp. 910, 914–15 (D.Conn.1976), the decisions in fact turn on the statutory purpose of conserving the debtor's estate for the benefit of creditors.

*Rubin,* 661 F.2d at 991–92.

The debtor's guilty plea evidences the debtor's indebtedness to SNR for misapplying to his own use and benefit $750,000 in proceeds of a loan from the United American Bank in Kentucky to SNR. By giving his note and mortgage for the $800,000 disbursed to SNR, the debtor benefited by obtaining the discharge of his $750,000 debt to SNR. In short, he indirectly received a value equivalent to 93.75% of the property which he conveyed. This court is persuaded that such a benefit constitutes the receipt of "reasonably equivalent value" within the meaning of § 548(a)(2). *See generally Durrett v. Washington National Insurance Co.,* 621 F.2d 201, 203 (5th Cir.1980) (transfer of real property for less than 70 percent of market value was not for "fair equivalent" under § 67(d) of the former Bankruptcy Act).

In accordance with Bankruptcy Rule 7052, this memorandum constitutes findings of fact and conclusions of law.