Michael D. **BARRETT**, Donal B. Barrett, and G. Lamar Crittenden, Jr., Plaintiffs,

v.

**CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Defendant.**

Civ. A. No. 87–1478–C.

United States District Court, D. Massachusetts.

Sept. 9, 1988.

Alexander Whiteside, Putnam, Bell & Russell, Boston, Mass., for plaintiffs.

Rudolph F. Pierce, Goulston & Storrs, Boston, Mass., Joel R. Leeman and Richard E. Simpson, Kirkland and Ellis, Chicago, Ill., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

On April 14, 1988, this Court granted summary judgment in favor of the defendant, Continental Illinois National Bank and Trust Company (Continental). The plaintiffs have requested a reconsideration of that decision on a number of grounds.

The pertinent facts are as follows: In 1982, Continental loaned $3.5 million to Michael Maduff. Maduff was a shareholder of Maduff Group, Inc. which in turn was the parent company of Maduff & Sons, Inc. Maduff & Sons was the sole owner of Eastern Capital Corporation, a now defunct commodities trading firm. Eastern Capital was formerly owned by the plaintiffs who allege that the corporation owes them several debts.

Of the $3.5 million that Continental loaned to Maduff, $2 million was "downstreamed" through the chain of corporations until it reached Eastern Capital. Apparently, the money was loaned to Michael Maduff, who then reloaned it to Maduff Group. Maduff Group then contributed the funds to the capital of Eastern Capital, either indirectly through Maduff & Sons, or directly to the corporation itself. In either event, it is undisputed that Eastern Capital had no legal obligation to repay the funds to either Maduff, Continental, or any of the affiliated corporations.

For two years, Eastern Capital held the funds it received in the form of certificates of deposit. The certificates matured in 1984, and the money was then "upstreamed" back to Michael Maduff via a series of corporate resolutions passed by Eastern Capital and the other Maduff companies authorizing the distribution. Maduff issued instructions that the money be used to pay part of his outstanding debt to Continental.

The plaintiffs brought an action to challenge the payment of Maduff's debt to Continental under the Uniform Fraudulent Conveyance Act (UFCA). Summary judgment was granted to the defendant on the grounds that the plaintiffs had failed to produce any evidence showing that a genuine issue of fact existed as to the corporation's insolvency. Insolvency is an element of a fraudulent conveyance claim under Section 4 of the UFCA. At the time of the defendant's motion, the Court construed the complaint as stating only a claim under Section 4.

## NEWLY DISCOVERED EVIDENCE

One of the grounds raised by the plaintiffs on their motion for reconsideration is that they have recently discovered new evidence of Eastern Capital's insolvency. This evidence consists of two financial statements filed with the National Association of Securities Dealers (NASD). Together these documents indicate that Eastern Capital was left with a negative net worth of $264,238 after the $2 million used to pay Michael Maduff's debt to Continental was withdrawn from the company.[1] On the basis of this evidence, the plaintiffs ask the Court to vacate its decision granting summary judgment in favor of the defendant.

■ Newly discovered evidence may be a basis for relief under Rule 59. To obtain relief from an unfavorable judgment on this ground, the plaintiffs must show that they were "excusably ignorant of the facts despite exercising due diligence to uncover them." *Jay Edwards, Inc. v. New England Toyota Distributors, Inc.,* 708 F.2d 814, 825 (1st Cir.), *cert. denied,* 464 U.S. 894, 104 S.Ct. 241, 78 L.Ed.2d 231 (1983).

■ In this case, the plaintiffs have made no such showing. The financial statements which the plaintiffs claim as newly discovered evidence have been a matter of public record since 1984. To obtain these documents from NASD, the plaintiffs had only to request the material which is how they ultimately obtained these documents in this case. The plaintiffs did not however, request the documents until April 1988, over a month after

---

1. The plaintiffs claim that this figure is even greater if proper methods are used to account for their claims against the corporation.

the hearing was held on the motion for summary judgment.

As justification for their failure to obtain these documents and present them with their memorandum in opposition to the motion for summary judgment, the plaintiffs assert that Donal Barrett, a lawyer who represented both his co-plaintiffs and himself on this particular matter, was a "tyro" before the courts, unfamiliar with litigation. By affidavit, Mr. Barrett avers that he did not understand that the failure to make a showing of Eastern Capital's insolvency could result in the entry of summary judgment against the plaintiffs. Mr. Barrett also claims that he did not understand the Rule 56(f) requirements for requesting a continuance of the motion pending completion of discovery.

The short answer to Mr. Barrett's excuses is that if he was not familiar with the rules governing motions for summary judgments, as an attorney, he had an ethical duty to prepare himself before undertaking the representation of his co-plaintiffs in their opposition to the defendant's motion. Very little research is required to discover that a party opposing a motion for summary judgment must present evidence of specific facts showing that there is a genuine issue for trial. F.R.C.P. 56. Only slightly more diligence is required to discover that the Rules do not permit a party to wait until trial to present his or her evidence once the opposing party has properly moved for summary judgment. *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Although the Court has been reminded that the discovery deadline was extended until May 11, 1988, a scheduling order overlooked in the memorandum issued on April 14, 1988, this extension does not excuse the plaintiffs' failure to produce the required evidence in opposition to the defendant's motion. First, the hearing date for the motion was scheduled at the same pre-trial conference in which the Court extended the period for discovery. Plaintiffs' counsel did not object to the hearing date, even though the hearing on the motion would be held before the close of discovery. Nor did the plaintiffs at any time request a continuance of the hearing so they could complete their assembly of the evidence. As the plaintiffs knew of the hearing date and knew that they needed to complete discovery, it was incumbent upon them to ask for a continuance under Rule 56(f). *Over the Road Drivers, Inc. v. Transport Ins. Co.,* 637 F.2d 816, 821 (1st Cir.1980).

## SECTION 5 CLAIM

■ For the foregoing reasons, the judgment shall stand insofar as the plaintiffs seek to renew their claim under Section 4 of the Uniform Fraudulent Conveyance Act. However, the plaintiffs also ask that the Court vacate the judgment entered against them on the grounds that the Court failed to consider all of the claims pleaded in the complaint. The plaintiffs assert that their complaint did not specify on which section of the Uniform Fraudulent Conveyance Act they based their claim. They argue that the complaint was sufficient to state a claim under Section 5 of the UFCA as well as Section 4.[2] The plaintiffs further assert that the evidence before the Court on the motion for summary judgment was sufficient to create a genuine issue of material fact concerning the liability of Continental under a Section 5 theory. Specifically, the plaintiffs point out that the affidavits submitted indicate that after the transfer, Eastern Capital was unable to conform to the net capital requirements of the Securities and Exchange Commission and NASD. According to the plaintiffs, and the Court agrees, failure to conform to these requirements is sufficient to create an issue as to whether the amount of capital remaining in the corporation was unreasonably small under Section 5.

The defendant vigorously attacks what it views as the plaintiffs' attempt to relitigate

**2.** Section 5 provides in pertinent part: "Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction, for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors ... without regard to his actual intent." M.G.L. c. 109A, § 5.

this case under a different legal theory than that presented in the complaint and in the plaintiffs' opposition to the motion for summary judgment. Although the Court is not entirely unsympathetic to the defendant's viewpoint, as the complaint could understandably be construed as stating only a Section 4 claim, it must be noted that Continental itself did not so construe the pleadings. In the memorandum of law it filed to support its motion for summary judgment, Continental did not confine its arguments to refuting only a Section 4 claim. Instead, the defendant interpreted the complaint as also setting forth a claim under Section 7 of the UFCA.

As pleadings are to be construed liberally and the complaint gave the defendant sufficient notice that the plaintiffs attacked the transfer as fraudulent, even if the particular theories under Chapter 109A were unclear, the Court will allow the plaintiffs to proceed on a Section 5 theory,[3] provided, of course, that the defendant's arguments concerning fair consideration and the status of plaintiffs as creditors are resolved in favor of the plaintiff.

The defendant has requested that the Court consider the alternative grounds presented in the defendant's original motion for summary judgment, issues which the Court had no occasion to rule on because of the plaintiffs' failure of proof concerning the insolvency element of their Section 4 claim. These issues now require resolution before the plaintiffs can proceed to trial on the Section 5 claim.

FAIR CONSIDERATION

In order to succeed on a Section 5 fraudulent conveyance claim, among other things, the plaintiffs must prove that the transferor conveyed the property without receiving fair consideration. M.G.L. c. 109A, § 5. The UFCA states that a transferor receives fair consideration when "in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied." M.G.L. c. 109A, § 3. The defendant claims that fair consideration was given for the transfer because Michael Maduff, not Eastern Capital, transferred the funds to Continental in satisfaction of Maduff's antecedent debt. Alternatively, the defendant argues that even if Eastern Capital, rather than Maduff, is deemed the transferor of the funds, the corporation received an economic benefit from the use of the funds loaned to Maduff which constituted fair consideration for Eastern Capital's payment of Maduff's debt.

The substance of the challenged transaction is the payment by Eastern Capital of the debt of a shareholder, whether the distribution of assets for this purpose was made directly to Continental or first to Michael Maduff (via the corporate structure) who then applied the funds to his debt. For this reason, for the purpose of determining whether Continental is potentially liable for the return of the property, the relevant question is whether Eastern Capital received fair consideration in return for the distribution of assets worth $2 million.

Although, as noted above, a transfer of property in satisfaction of one's own antecedent debt is a transfer for fair consideration under Section 3 of the UFCA, a transfer in satisfaction of a third party's debt is generally not sufficient to satisfy the consideration requirements of Section 3. *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir.1981). Courts have, however, carved out an exception to this rule where the transferor receives some benefit in the transaction "even though the consideration given for his property or obligation goes initially to a third person...." *Id.* at 991. *See also Klein v. Tabatchnick*, 610 F.2d 1043, 1047 (2d Cir.1979); *In re Lawrence Paperboard Corp.*, 76 B.R. 866, 873 (Bankr.D.Mass. 1987); *Johnson v. First National Bank*, 81

---

**3.** The defendant's assertion that Section 5 does not apply here because Eastern Capital liquidated its business after the transfer is without merit. The statute includes transferors already engaged in a business or transaction, as well as those about to embark on such. Construing Section 5 liberally, Eastern Capital was engaged in business until all claims against it were resolved.

B.R. 87, 88 (Bankr.D.Fla.1987); *In re Butcher*, 51 B.R. 61, 66 (Bankr.D.Tenn. 1985); *In re Ear, Nose & Throat Surgeons, Inc.*, 49 B.R. 316, 320 (Bankr.D. Mass.1985).

Although the exception to the rule concerning the payment of third party debts is widely accepted, the Court finds it inappropriate to apply it in this case. In my view, to adopt the defendant's economic benefit theory in this case would undermine the purpose of the net capital rules established by the Securities and Exchange Commission. 17 C.F.R. § 240.15c3–1 (1987); 17 C.F.R. § 1.17 (1987).

The net capital rules were designed to protect investors by requiring a corporation dealing in securities to maintain a certain ratio of liabilities to assets. *In re Weis Securities, Inc.*, 605 F.2d 590, 593 (2d Cir. 1978); *Securities & Exchange Commission v. Resch–Cassin & Co.*, 362 F.Supp. 964, 979–80 (S.D.N.Y.1973). Not only are they required to maintain a certain level of capital but brokers and dealers which fail to conform to the net capital requirements must cease operations during the continuance of the violation. *In re Weis Securities, Inc.*, 605 F.2d at 593.

It is undisputed that Michael Maduff's purpose in obtaining the funds from Continental was to provide Eastern Capital with the capital necessary to conform to SEC requirements. To accomplish this purpose, Maduff obviously had to structure the transfer of funds to Eastern Capital as a contribution to the capital of the corporation, for to do otherwise would have increased the liabilities of Eastern Capital in defeat of the purpose of the transaction. In the Court's view, a holding that Eastern Capital could return the funds to either its shareholder or the defendant without regard to the existence of claimants against the corporation and at a time when its remaining capital would be insufficient to satisfy those claims would effectively recharacterize this capital contribution as a

loan to the corporation. As a result, the net capital rules would become merely formal requirements with little value in ensuring the financial responsibility of the broker or dealer and protecting claimants against the corporation. With a wink and a nod to the SEC requirements, a broker or dealer could formally denominate a contribution as part of the capital of the corporation yet knowing all the while that it can treat the funds as merely another liability of the corporation. The Court is reluctant to adopt an interpretation of state law that would reduce federal rules designed to protect investors [4] to mere formalities, especially where there has been no indication that the Commonwealth itself would adopt the interpretation of its fraudulent conveyance law offered by the defendant.

## PLAINTIFFS' STATUS AS CREDITORS

The defendant also asserts that the summary judgment against the plaintiffs must remain intact because they are not creditors of Eastern Capital. Continental correctly notes that only a creditor may challenge a conveyance as fraudulent. *Fuller v. Fuller*, 228 Mass. 441, 117 N.E. 838 (1917); *Perry v. Hayward*, 66 Mass. 344 (1853). Under the UFCA, a creditor "is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." M.G. L. c. 109A, § 1. According to Continental's theory, the plaintiffs are not creditors because at the time that plaintiff Michael Barrett advanced the funds to Eastern Capital, the corporation was undercapitalized. Continental also asserts that plaintiff Lamar Crittendon was not a creditor of Eastern Capital because the debt owed him had not yet been reduced to judgment.

The defendant's assertion concerning the status of Lamar Crittendon as a creditor of Eastern Capital is without merit. The UFCA definition of creditor specifically includes persons with unmatured or unliquidated claims. M.G.L. c. 109A, § 1. Creditor status does not therefore depend on the issuance of a judgment prior to the trans-

---

**4.** Although I recognize that the plaintiffs are not customers of Eastern Capital and therefore not members of the class to be protected by the net capital rules, in my view, the economic benefit theory offered by the defendant would undermine the protection afforded to investors regardless of plaintiffs' status.

fer. Crittendon rendered legal services to Eastern Capital prior to the transfer of funds to Continental. He therefore had a claim for payment and was a creditor of Eastern Capital even though the debt was not formally adjudicated until 1986.

The defendant is also not entitled to summary judgment on the grounds that Michael Barrett's loans to Continental are more accurately described as capital contributions because Eastern Capital was undercapitalized at the time that it received the loans. Although undercapitalization frequently persuades a court to subordinate shareholder loans to the claims of other creditors or to treat them as equity contributions, the mere fact of undercapitalization does not in itself mandate such action. One of the primary reasons for recasting shareholder loans as equity contributions or otherwise treating them differently from other debts of a corporation is the protection of non-insider creditors when the assets of the business are inadequate to cover their claims. *See, e.g., L & M Realty Corp. v. Leo,* 249 F.2d 668 (4th Cir.1957). In this case, the undercapitalization of Eastern Capital is not a sufficient reason to recast the Barrett loans and defeat the plaintiffs' standing as creditors where Eastern Capital owed no legal obligation to transfer the funds to Continental.[5]

The defendant has failed to demonstrate that Eastern Capital was under no legal obligation to repay the funds advanced to it by Michael Barrett. There remains therefore a genuine issue as to the status of Barrett's contributions, as well as to the adequacy of the capital remaining in Eastern Capital's coffers. The judgment entered in favor of the defendant will be vacated so the plaintiffs may proceed under M.G.L. c. 109A, § 5.

Order Accordingly.

---

**5.** The court expresses no opinion as to whether the loans would be treated as equity contributions in the event Eastern Capital was legally liable to other non-shareholder creditors.