W. H. HOFLER, as Trustee in Bankruptcy of Kirchofer and Arnold, Inc., Bankrupt, Plaintiff,

v.

MARION LUMBER COMPANY, Inc., Defendant.

Civ. A. No. 7411.

United States District Court
E. D. South Carolina,
Florence Division.

Sept. 16, 1964.

Shepard K. Nash, Sumter, S. C., Allston Stubbs, Durham, N. C., for plaintiff.

Wright, Scott, Blackwell & Powers, Florence, S. C., Claud R. Wheatly, Jr., Beaufort, N. C., Wallace, Murchison & Fox, Wilmington, N. C., for defendant.

HEMPHILL, Chief Judge.

Action instituted by plaintiff to recover $60,239.74 from defendant upon complaint alleging payment of such sum to defendant by bankrupt was fraudulent as to existing creditors of bankrupt under provisions of Section 67, sub. d(2) (a) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d(2) (a). The statute relied on provides:

> "Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a peti-

tion initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent;"

Consideration of the issue demands reference to Section 67, sub. d(1) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d(1) which reads (and defines):

"For the purposes of, and exclusively applicable to, this subdivision: (a) 'Property' of a debtor shall include only his nonexempt property; (b) 'debt' is any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent; (c) 'creditor' is a person in whose favor a debt exists; (d) a person is 'insolvent' when the present fair salable value of his property is less than the amount required to pay his debts; and to determine whether a partnership is insolvent, there shall be added to the partnership property the present fair salable value of the separate property of each general partner in excess of the amount required to pay his separate debts, and also the amount realizable on any unpaid subscription to the partnership of each limited partner; and (e) consideration given for the property or obligation of a debtor is 'fair' (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, or (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained."

Some time prior to September 30, 1958, bankrupt, holding in excess of fifty percent of the common stock of Morehead City Shipbuilding Corporation (hereinafter called Morehead) became parent corporation of Morehead. Morehead was engaged in shipbuilding, specializing in the construction of shrimp trawlers. Once Morehead received an order for construction, such order would be transmitted to bankrupt which in turn would advance money for construction, would thereafter take assignment from Morehead to bankrupt on the ship mortgage of the particular vessel, and, in turn, market the ship mortgage. During the time of this relationship bankrupt was an investment and managing corporation engaged in the business of investing in various corporations, acting as management supervisor for them, and engaged in the business of brokering securities.

Defendant had been supplying lumber to Morehead for use in construction of vessels. Lumber was delivered to Morehead almost every week during 1957 and 1958 and periodic payments were received by defendant on the account. Morehead fell behind in payments on the account, and defendant Lumber Company retained local counsel to collect the amount due. After legal action was commenced, a settlement was reached whereby Morehead agreed to pay $10,000.00 on the account and give a 60 day note for the balance in the amount of $47,251.47, collateralized by an assignment of first preferred mortgages on trawlers in the amount of 120% of the principal amount of the note. Thereafter a question on payment of interest on the account was settled for the sum of $2,500.00.

On December 16, 1962, a check in the amount of $10,000.00 drawn on an account of bankrupt was issued in payment of the agreed sum of $10,000.00 and a note by Morehead in the amount of $47,251.47 dated December 9, 1958 was forwarded to the defendant. As provided in the agreement the note was collateralized by two preferred ship mortgages having a face value of $58,893.69. On December 22, 1958, a check in the amount of $2,500.00 was drawn on an account of bankrupt to cover the settlement of the interest on the account. The collateralized note, with interest thereon was taken up by checks of bankrupt during the month of February 1959, total payment to de-

fendant in discharge of the Morehead debt being the amount for which this suit was brought.

On March 4, 1959, Kirchofer & Arnold, Inc., filed Petition in Bankruptcy under Chapter 11 of the Bankruptcy Act. At the time the note payments were made, creditors of bankrupt were in existence, some of which have or had claims provable, or proved, against the bankrupt estate.

Prior to the institution of suit by defendant against Morehead, on the open account due for goods furnished, Morehead, in July of 1958, had given defendant a $50,000.00 open note payable in five installments of $10,000.00 each, none of which were paid. The North Carolina action was brought by an attorney in Morehead City, was terminated by settlement December 9, 1958 resulting in the agreement which bankrupt discharged as recited above.

The payments in question were not an isolated transaction where bankrupt paid a single debt of one of its subsidiaries, but were a part of an overall pattern of operations that had existed for some time. On numerous occasions bankrupt paid items of current expense of Morehead such as telephone and telegraph bills, legal expense, advertising expenses, office supplies, water bills, electric bills, office rent, management fees, and other items of current expense as well as made payments on notes due to suppliers such as Gregory Poole Equipment Company, Queensboro Steel Corporation, and Marion Lumber Company. These payments in the running of the account between bankrupt and Morehead were offset by payments by Morehead which were deposited in bank accounts of bankrupt, and by transfer of securities from Morehead to bankrupt.

The statute provides that intent is not an element of consideration. There remains, however, the question of "fair consideration". The critical time for determining the fairness of the consideration is at the time of payment. Collier on Bankruptcy states the rule as follows:[1]

"The critical time is that of the transfer; neither subsequent depreciation nor appreciation in the value of the consideration given affects the question of the original fairness of the consideration."

Plaintiff relied heavily on the testimony of C. Albert Smith, accountant appointed by the Court to make an audit of bankrupt as of March 4, 1959.[2] Not only did Smith propose various adjustments to the book entries between bankrupt and Morehead, but advised that because of these adjustments and revaluation of certain stocks owned by bankrupt, that bankrupt was insolvent during the period the payments for Morehead were made to defendant. Mr. Smith had, however, during the early part of 1959 prepared the income tax returns for bankrupt[3] and his balance sheet filed with the return showed a net worth of $96,800.56 for bankrupt. The record reflects that the Special Master who heard the entire case did not accept the theories upon which Smith based his conclusions. In his report, he recites:

"That values may not turn out to be what they are thought to be at the time of a transfer does not make the transfer fraudulent. In the case of Wagoner v. Wallace Turnbull Corporation & Lbr. Terminals, 306 Pa. 442, 160 A. 105, stock thought to be worth $75,000.00 was part of a transfer but later turned out to be worthless. At the time of the transfer the statements of the company showed that company was solvent but it subsequently developed that the books of the company did not reflect the correct financial condition. The Court refused to set aside the transfer as fraudulent under the State Uniform

1. 4 Collier on Bankruptcy (14 Ed., 1962) p. 351.

2. Date of filing of Petition.

3. For fiscal year ending September 30, 1958.

Fraudulent Conveyance Act which is similar in language and purpose to § 67d(2) (a) of the Bankruptcy Act. The Court held that the parties had no idea of the true financial condition of the company until after the transfer had been consummated.

"What is fair consideration must be determined upon the facts and circumstances of each case. See Halsey v. Winant, 258 N.Y. 512, 180 N.E. 253, involving stock valuations. Consideration, of course, may run to a third party. Williams v. Twin City Company, 9 Cir., 251 F.2d 678. In the Williams case a transfer was made to a third party in consideration for a creditor releasing his claims to the third party. The Court affirmed a finding that there was fair consideration to support the transfer. In the case at bar the payment by K & A to the defendant was in consideration for Morehead's giving K & A credit on the intercompany account, as the case may be, in a like amount and in consideration for the defendant's satisfying the debt of Morehead.

"The case of Barr & Creelman Mill & Plumbing Supply Company v. Zoller, 2 Cir., 109 F.2d 924, is strikingly similar on the facts to the case at bar. There a subsidiary corporation, Dolomite 3 Corporation, issued checks on its accounts to satisfy the claim a supplier had against the parent corporation, Dolomite Marine Corporation. The supplier had furnished materials ordered by the parent corporation for the construction of a vessel, although the vessel was owned by the subsidiary corporation. At the time the subsidiary made the payment on the debt of the parent, the subsidiary owed the supplier nothing. Both parent and subsidiary went into bankruptcy within six to ten months after the payments were made. The trustee in Bankruptcy of the subsidiary, Dolomite 3, sought to recover the payments as illegal transfers. The Court held that among other things that the transfers were not fraudulent under § 67d (2) and there was no fraudulent conveyance under the Uniform Fraudulent Conveyance Act of New York.

"'* * * we should note that we are not convinced of the unlawfulness of the payments. Appellant (the creditor-transferee) had sold materials to Dolomite Marine, which Dolomite Marine used in constructing the ship owned by Dolomite 3. Appellant (the creditor-transferee)"

  \*    \*    \*    \*    \*    \*

"'Dolomite 3 and Dolomite Marine had close intercompany accounts; appellant (the creditor-transferee) had grounds to believe that the payments would be adjusted on the books of parent and subsidiary in some lawful manner.' Barr & Creelman Hill & Plumbing Supply Co. v. Zoller, 2 Cir., 109 F.2d 924, 926, 928."

■ There is no claim here that the payments by bankrupt were the capitulating cause of the March 4 Petition for Bankruptcy, nor was a precipitant to insolvency. Plaintiff, in exceptions to the finding of the Special Master, based its objections mainly on the argued insolvency of bankrupt at the time and the lack of fair consideration. The burden is on the plaintiff. This burden has not been discharged.

■ The finding of the Special Master that the bankrupt was not insolvent at the critical time of payment and that the settlement of a suit which would have seriously affected the credit standing of bankrupt parent and affiliate Morehead was fair consideration, is affirmed and adopted.

The objections are overruled.

Judgment shall be entered for defendant; plaintiff shall pay costs.

And it is so ordered.