**Philip MANDEL, as Trustee of William Gluckin & Co., Inc. a/k/a Naturflex**

v.

**John R. SCANLON and Katherine M. Scanlon.**

Civ. A. No. 75–250.

United States District Court,
W. D. Pennsylvania.

Feb. 10, 1977.

**520**

Joseph W. Conway, Pittsburgh, Pa., for plaintiff.

Joseph F. McDonough, Pittsburgh, Pa., for defendant.

## OPINION

KNOX, District Judge.

This case requires the court to consider the fundamental theme underlying the Bankruptcy Act, equality of distribution, under an unusual set of facts.[1] The plaintiff, Philip Mandel, is a trustee of a bankrupt corporation, William Gluckin and Company, Inc. [Hereinafter: Gluckin]. In his capacity as trustee, the plaintiff seeks to recover a transfer of money made by a subsidiary of Gluckin, Multipane, Inc. to the defendants, John R. and Katherine M. Scanlon. The plaintiff seeks this recovery in reliance upon the Bankruptcy Act provisions outlawing preferential transfers, 11 U.S.C. § 96 and fraudulent transfers, 11 U.S.C. § 107.

A nonjury trial held on September 29, 1976, disclosed a lengthy sequence of events involving the Scanlons and Multipane, Inc. preceding the filing of this lawsuit. Prior to 1968, the Scanlons were the sole shareholders of Architectural Building Specialties Company [Hereinafter ABS], a Pennsylvania corporation engaged in the manufacture and sale of aluminum and glass building products. In the Spring of 1968, Mr. David Diamond, President of Multi-

---

1. For further discussion of the fundamental policy of the Bankruptcy Act, see 3 Collier on Bankruptcy, § 60.01.

pane, Inc., approached the Scanlons, first by telephone and then at two meetings, with a proposition to buy ABS.

Mr. Diamond, and at the second meeting Mr. Gerald Gluckin, president of the parent corporation, represented to the Scanlons that Multipane had developed a new process to treat glass so as to improve its conductive properties. This process could be applied to ABS products.

As a result of these representations, the Scanlons agreed to sell ABS to Multipane for $98,000 of Gale Industries stock, Gale Industries being another subsidiary of Gluckin, and a five-year employment contract.

The Scanlons never received the Gale Industries stock which was the primary consideration for the sale of ABS to Multipane in spite of numerous phone calls and meetings. Finally, the Scanlons filed suit against Multipane in this district at Civil Action No. 70–1405 alleging that they were deceived into selling ABS to Multipane by fraudulent misrepresentations and omissions of material facts and were never paid the consideration due to them.

In May 1971, while the above action was pending, the Scanlons were notified that the assets of Multipane were to be sold at a bulk sale. The Scanlons filed a motion for preliminary injunction to enjoin this sale. The parties subsequently entered into a stipulation whereby $25,000 of the proceeds of the bulk sale were to be set aside to secure payment "of any final, non-appealable judgment entered in favor of plaintiffs and against defendant Multipane in this action".

In November, 1972, the Scanlons withdrew their lawsuits against Multipane in return for payment of $23,000 of the $25,000 originally set aside at the bulk sale with the remaining $2,000 to go to their attorneys.

In December, 1972, the Scanlons received a cashier's check for $23,000 drawn on a "factoring account" at the First National Bank of Boston from the attorneys for Multipane and Gale.

On February 27, 1973, Gluckin as Debtor filed a Chapter X Bankruptcy proceeding in the Southern District of New York.[2] On February 26, 1975, the present suit was filed in this court seeking recovery of the December, 1972, payment of $23,000 to the Scanlons.

## (1) Preferences

Developing early in the common law of England and reflected in numerous drafts of the Bankruptcy Act in the United States, the law has looked with suspicion upon payments by a debtor to one or more creditors in preference to the general class of creditors.[3] The Bankruptcy Acts in the United States have accordingly invalidated certain transfers occurring before bankruptcy to a preferred class of creditors.

The current act (11 U.S.C. § 96) according to Collier's treatise requires seven factors, all of which must be proven by the trustee to invalidate a transfer as being preferential.

"Briefly stated the elements of a preference under § 60a consist of the following:
. . . a debtor

(1) making or suffering a transfer of his property, (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt [resulting in a depletion of the estate], (4) while insolvent, and (5) within four months of bankruptcy or of the original petition under Chapters X, XI, XII or XIII of the Act, (6) the effect of which transfer will be to enable the creditor to obtain a greater percentage of his debt than some other creditor of the same class. The creditor's knowledge or reasonable cause to believe that a prefer-

**2.** The proceeding is captioned "In the matter of William Gluckin Company Limited, Debtor, Presently conducting business under its own name and through the following wholly-owned subsidiaries: _ _ _ Multipane, Inc., U.S.A. _ _ _. It is agreed by counsel that Multipane, Inc. was never adjudicated a bankrupt

and was not actually a party to the Chapter X proceeding.

**3.** For discussion of the development of bankruptcy law in the United States and in England, see 3 Collier on Bankruptcy §§ 60.04–06.

ence is effected by a transfer to him is no longer an element in determining whether such transfer constitutes a preference under subdivision a of § 60. However, under subdivision b a preference avoidable by the trustee in bankruptcy only upon proof of the additional element that (7) the creditor receiving or to be benefited by the preference had reasonable cause to believe that the debtor was insolvent. If any one of the elements of a preference as enumerated in § 60a is wanting, there is no necessity of considering an avoidance of the transfer under § 60b, since a preference under the terms of § 60 itself has not been established. Thus a transfer lacking any element (1)– (6) supra, is unassailable as a preference, except insofar as § 70 may come into play. (11 U.S.C. 110.)

On the other hand, where a preference as defined in § 60a is found to exist, *there can, nevertheless, be no avoidance of such a preference under § 60b unless the transferee had reasonable cause to believe that the debtor was insolvent.* In all such cases the burden of proving the existence of these essential elements is upon the trustee seeking to avoid the transfer." 3 Collier on Bankruptcy § 60.- 02.

 This court holds that the trustee has failed to establish elements 2, 3, 6 and 7 of a preference and therefore the payment to the Scanlons cannot be voided under § 60. As Collier points out, the failure of proof as to any one of these elements constitutes sufficient grounds to dismiss the plaintiff's claim that a voidable preference exists.

In his post trial brief, the plaintiff appears to concede that the Scanlons were not creditors of Gluckin. (The second required element of a preference.)

"In any event defendants do not fit the definition of a "creditor" of the Debtor, i. e., 'anyone who owns a debt, demand, or claim provable in bankruptcy . . . .'. 11 U.S.C.A. § 1(11). Defendants were creditors of Multipane, Inc. and/or Gale and not of the Debtor."

This is a correct statement of the law. In the case of *Brinig v. American Credit Bureau, Inc.,* 439 F.2d 43, 45 (9th Cir. 1971), the court held that:

"subsection [1(11)] imposes at least two distinct limitations upon the meaning of the term 'creditor': (1) the person must have the kind of claim that can be proved in bankruptcy, and (2) the debt, demand, or claim must involve a liability of the bankrupt."

Since all of the Scanlons' dealings prior to this lawsuit were with Multipane, including the $23,000 settlement, the Scanlons were clearly creditors of Multipane and not the bankrupt Gluckin. The required debtor-creditor relationship under § 60 and § 1(11) therefore does not exist and the plaintiff has failed to establish the existence of a preference on this ground alone.

The separate corporate existence of Gluckin and Multipane applies with equal force to invalidate the third and the sixth elements of the plaintiff's case. It was an antecedent debt of Multipane's which was paid and one of Multipane's general creditors was preferred. In short, Gluckin was a third party to all of the relevant transactions between Multipane and the Scanlons and the payment of $23,000 to the Scanlons is not the sort of preferential payment which is intended to be invalidated by § 60.

Finally, even if the $23,000 payment were to be viewed as being preferential, it could not be avoided because the trustee has failed to establish the seventh element of his case.[4] The testimony at trial clearly established that the Scanlons had no reasonable cause to believe that the debtor, Gluckin, was insolvent, or to even inquire into the matter. The $23,000 was paid by a cashier's check which did not identify the source of the underlying funds. The pay-

---

4. 11 U.S.C. § 96 provides inter alia:

"(b) Any such preference *may be avoided by the trustee if the creditor receiving it or to be benefited thereby* or his agent acting with ref-

erence thereto *has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent.*

ment was made pursuant to agreement to set aside funds entered into in May 1971. The face of the check in May 1971 indicates that it was issued on the basis of funds contained in a factoring account at the First National Bank of Boston. Thus, the Scanlons had no knowledge that the funds came from Gluckin let alone that Gluckin was insolvent at the time of payment. See *Seligson v. Roth,* 402 F.2d 883 (9th Cir. 1968); *Conway v. Neff,* 330 F.Supp. 1180 (E.D.Pa.1971).

For all the above reasons, the $23,000 paid to the Scanlons was not a voidable preference under the standards of § 60. The trustee is not entitled to recover on this basis.

### (2) Fraudulent Transfers

11 U.S.C. § 107 d(2) lists four possible types of fraudulent transfers.[5]

Since there was no proof at trial of an actual intent to defraud creditors, the trustee must rely on the first three tests which create a presumption of fraud upon the basis of objective standards.

Several of the elements involved in these three tests are clearly present. The $23,000 payment to the Scanlons was a transfer made within one year prior to filing the bankruptcy petition by Gluckin. Further, the financial status of the corporation meets the requirements of any one of the three tests:

1. The debtor was insolvent.

2. The property remaining in the debtors' hands was an unreasonably small capital.

3. The debtor incurred debts beyond his ability to pay as they mature.

This leaves two issues to be resolved under any one of the three tests:

1. Was Gluckin a debtor as to Scanlon?

2. Was the transfer made for a fair consideration?

■ The trustee's claim under § 67 might well be disposed of on the basis that the Scanlons were creditors of Multipane—not of Gluckin. However, § 67 d(1)(c) contains a broader definition of creditor than does, for the purposes of this subdivision, section 60—a creditor "is a person in whose favor a debt exists". Thus, the court prefers to base its opinion on the second issue—fair consideration.

Section 67 d(1)(e) defines fair consideration as follows:

"(e) consideration given for the property or obligation of a debtor is 'fair' (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, or (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained."

While there is scant authority dealing with the precise facts of this case, fair consideration appears to be present in at least three ways.

■ First, consideration would exist by virtue of the parent corporation's interest in settling a lawsuit brought against the subsidiary. The case of *Hofler v. Marion Lumber Company,* 233 F.Supp. 540 (E.D.S. C.1964), was decided upon this type of reasoning. In *Hofler,* the parent corporation

5. "(2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; or (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; or (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors."

paid the amount due in settlement of a lawsuit brought by a creditor of the subsidiary who had supplied lumber to the subsidiary. Consideration was found to exist by virtue of the parent's interest in the subsidiary's credit rating. The case *sub judice* involves the added elements of good will and good business standing in that the lawsuit against the subsidiary involved alleged breaches of the securities laws and not merely breach of contract claims as in *Hofler.*

A second element of consideration lies in the $23,000 escrowed from the bulk sale of Multipane's assets. The disposition of these funds was never explained at trial and it might be presumed that these funds were turned over to the parent corporation at the time of the sale. Fair consideration would therefore exist in an exchange of funds between Multipane and Gluckin. At reargument ordered by the court both counsel agree that the escrow fund contemplated by defendant Ex D3 was not set up. If this fund was taken by the parent it was obligated to restore it.

Finally, fair consideration might exist by virtue of the history of business dealings between Gluckin and Multipane as disclosed at trial. Sidney Lautt, a CPA for Philip Mandel, testified that Gluckin had made a series of loans to Multipane in return for the assignment of Multipane's accounts receivable to a factoring account. The $23,000 check to the Scanlons came from this factoring account and thus it may be assumed that the transfer was part of a perfectly legitimate series of transactions between the parent and its subsidiary.

In light of the burden of proof resting on the trustee to establish all elements of a fraudulent transfer, 4 Collier on Bankruptcy § 67.43, the court has concluded that the above three possible elements of consideration are sufficient to defeat the trustee's claim. There is no evidence of actual intent to hinder, delay or defraud creditors under § 67 d(2)(d).

The court would finally like to note that it has carefully considered the spirit and intent of the bankruptcy laws. The Scanlons were victimized by apparent securities frauds over five years before a bankruptcy petition was filed by a subsidiary of the bankrupt. To permit the Scanlons to retain money received in settlement of their lawsuit against the subsidiary corporation does not, in the opinion of the court, frustrate the bankruptcy acts' policy of equality of distribution.

The foregoing contains findings of fact and conclusions of law as required by Rule 52(a).

## JUDGMENT ORDER

AND NOW, to wit, February 10, 1977, after non jury trial and consideration of the briefs, arguments and rearguments of counsel, for reasons set forth in the accompanying opinion,

IT IS ORDERED that the court finds that plaintiff is not entitled to recover in this case and judgment is hereby entered in favor of the defendants and against the plaintiff.