VAN GRAAFEILAND, Circuit Judge:
Jay N. Tabatchnick and S. Wolfe Emmer appeal from a $73,750 judgment recovered against them by Jerry B. Klein, trustee for the liquidation of the business of JNT Investors, Inc., under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa-78111. Klein cross appeals from that portion of the judgment dismissing other claims for relief. The parties’ differences have been much too extensively briefed and argued, both in this Court and in the court below. There are, however, several issues of substance that require discussion.
I
The Grant of Summary Judgment
JNT, a small securities broker and dealer with its office in New York City, was organized by defendant Tabatchnick in 1970. Tabatchnick was president of the company and owned 43 percent of its stock. Defendant Emmer owned 42 percent of the stock and maintained a trading account with the company. In October 1970 Tabatchnick obtained from the First National City Bank a personal loan of $50,000 payable on demand and secured by collateral owned by one Joseph Taub. Tabatchnick then loaned the $50,000 to JNT under a subordinated loan agreement maturing November 1, 1971.
When Tabatchnick decided to extend the subordinated loan for another year, Emmer supplied collateral for the bank loan to replace that of Mr. Taub. With Emmer’s authorization, Tabatchnick used 7,000 shares of common stock of Commonwealth Silver Industries, Ltd., from Emmer’s account at JNT for this purpose. To give Emmer some protection against loss, Ta-batchnick delivered to him certain portfolio securities of JNT. The receipt signed by Emmer stated that the securities were “assigned to [Emmer] as additional collateral until which time your 7,000 shares of Commonwealth Silver Ind. common stock will no longer be needed as collateral for Mr. Tabatchnick’s personal loan of $50,000 [from] First National City which was subordinated to JNT Investors, Inc.”
On February 15, 1972, the United States District Court for the Southern District of New York determined that JNT’s customers were in need of protection under 15 U.S.C. § 78eee and appointed plaintiff trustee for the liquidation of the company’s business. This liquidation was to be conducted generally “in accordance with, and as though it were being conducted under,” Chapter X of the Bankruptcy Act, 15 U.S.C. § 78fff(c)(1). Following his appointment, plaintiff contended that the transfer of JNT’s portfolio securities to Emmer was a fraudulent conveyance under section 67(d) of the Bankruptcy Act, 11 U.S.C. § 107(d),[1] and demanded their return, which was refused. In the suit that ensued, the district court granted plaintiff’s motion for summary judgment on the cause of action alleging a section 67(d) violation, reserving only the question of damages for jury determination. See Klein v. Tabatchnick, 418 F.Supp. 1368 (S.D.N.Y.1976). Damages subsequently were fixed by a jury at $73,750. For the following reasons, we believe that summary judgment should not have been granted.
In granting plaintiff’s motion, the district court made several factual findings. He found (1) that the transfer of JNT securities to Emmer occurred on December 13, 1971, (2) that the transfer was without fair consideration to JNT, and (3) that JNT was *1047 insolvent at the time of transfer. We believe that the making of these findings should have awaited trial.
(1)
Fixing the date of transfer was important in this case because of the extreme fluctuations in the value of the volatile securities involved and because it was the date as of which insolvency had to be determined. Although the receipt for the transferred securities was dated December 13, 1971, there was strong indication in the motion papers that the transfer actually occurred in February 1972 and the receipt was either delivered before transfer or was back-dated by some unidentified person. JNT’s inventory records show that the securities were in its vault as late as the end of January 1972, and there is deposition testimony that they were removed by Tabatch-nick in early February. We have examined the voluminous affidavits submitted to the district court and are unable to determine when the transfer occurred. We conclude that the district judge erred in making that determination on plaintiff’s application for summary judgment.
(2)
Fairness of consideration is generally a question of fact. McNellis v. Raymond, 287 F.Supp. 232, 238 (N.D.N.Y.1968), rev’d on other grounds, 420 F.2d 51 (2d Cir. 1970); see Roth v. Fabrikant Bros., Inc., 175 F.2d 665, 668 (2d Cir. 1949); Seligson v. New York Produce Exchange, 394 F.Supp. 125, 132-34 (S.D.N.Y.1975). The district court determined it as a question of law. See 418 F.Supp. at 1372. We do not believe the facts were so clearly established in plaintiff’s favor that they warranted disposition in this manner.
The district judge focused on the fact that Emmer’s written authorization for the use of his securities as replacement collateral was not executed until December 11, 1971, while the extension of Tabatchnick’s subordinated loan agreement was executed on November 1st. From this, he concluded that the December 11 authorization was of no value to JNT. In so doing, the district judge overlooked Tabatchnick’s sworn statement that he would not have extended the subordination agreement on November 1 if he had not obtained a prior commitment from Emmer that he would furnish replacement collateral.
Although the district judge was clearly correct in holding that transfers solely for the benefit of third parties do not furnish fair consideration under section 67(d)(2)(a), that statement may not be applicable to the transaction at issue. Benefit to a debtor need not be direct; it may come indirectly through benefit to a third person. See Williams v. Twin City Co., 251 F.2d 678, 681 (9th Cir. 1958); Mandel v. Scanlon, 426 F.Supp. 519, 523-24 (W.D.Pa.1977); McNellis v. Raymond, supra, 287 F.Supp. at 239; Hoflar v. Marion Lumber Co., 233 F.Supp. 540, 543 (E.D.S.C.1964). Tabatchnick was the majority shareholder of JNT, and everything he owned was in the firm. It appears from the motion papers that he operated the company as if it were his private domain. Emmer, the other substantial shareholder, denied that he participated in any way in company management. As he put it, “This whole company, JNT, was in fact Mr. Tabatchnick as far as I was concerned.” The $50,000 that Tabatchnick borrowed from the bank was loaned to the company, and that loan, Tabatchnick says, would not have been renewed without the use of Emmer’s collateral.
Construing the motion papers most favorably to the defendants, as we are required to do, Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), we cannot say that JNT received no benefit from Tabatchnick’s use of Emmer’s collateral. Whether this furnished fair consideration for the transfer of JNT’s own securities to Emmer depended among other things on JNT’s need for the $50,000, its availability from some source other than Tabatchnick, and the value of the securities transferred to Emmer. JNT was a new underwriting firm which started in business with little or no capital and no financial track record. The motion papers show that withdrawal of Tabatchnick’s $50,000 would have created a severe cash and capital prob *1048 lem in the company and that Emmer “provided a substantial benefit to JNT when he furnished the replacement collateral for the loan.” Moreover, there was substantial dispute as to the value of the securities transferred to Emmer; Tabatchnick in particular placed a very low value upon them. Whether this value was fairly equivalent to the benefits received by JNT should not have been decided on motion papers.
(3)
Insolvency is also a factual question. Britt v. Damson, 334 F.2d 896, 902 (9th Cir. 1964), cert. denied, 379 U.S. 966, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965); 1 Collier on Bankruptcy § 1.19 at 130.12 (14th ed. 1974); 4 Collier on Bankruptcy § 67.05 (14th ed. 1978). Moreover, a finding on the issue of insolvency often depends upon the factual inferences and conclusions of expert witnesses which, when controverted, do not lend themselves readily to summary judgment resolution. See United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Seligson v. New York Produce Exchange, supra, 394 F.Supp. at 128-32.
In this case, the district court made a finding of insolvency on the basis of expert testimony by the trustee, whose accounting procedures and qualifications as an expert were challenged by defendants and who admittedly “made numerous subjective judgments concerning values of various assets.” The district court erroneously assumed that defendants had deposed the trustee prior to the summary judgment application and emphasized that they had not sought out a certified public accountant to verify the accuracy of the trustee’s conclusions. However, when Emmer moved for reconsideration of the district court’s summary judgment order and produced the affidavit of a certified public accountant stating that JNT was solvent on both November 30, 1971, and December 31, 1971, the district court found that Emmer had presented no new evidence which would justify modification of its prior opinion. We conclude that this was error. Where, as here, intelligent adjudication requires more than the use of lay knowledge and the resolution of a disputed issue hinges in large measure upon conflicting opinions and judgments of expert witnesses, summary judgment is not appropriate. See Rains v. Cascade Industries, Inc., 402 F.2d 241, 247 (3d Cir. 1968); Cf. Vermont Structural Slate Co. v. Tatko Brothers Slate Co., 233 F.2d 9, 10 (2d Cir. 1956).
Because the grant of summary judgment was error, judgment for plaintiff on the se.cond and fourth causes of action must be reversed.[2] The second cause of action is remanded for trial as against the defendant Tabatchnick,[3] the fourth cause of action as against the defendant Emmer.[4]
II
Dismissal of Plaintiff’s Ninth Cause of Action
In February 1972, during discussions with the National Association of Securities Dealers (NASD), Tabatchnick agreed to cease conducting business with the public until *1049 such time as JNT was able to comply with the Net Capital Rule. 17 C.F.R. § 240.15c3-1. Tabatchnick was instructed that he would have to raise $138,000 in order to bring JNT into capital compliance. Once again, he went to Emmer for help. Emmer instructed another brokerage firm, in which he maintained a substantial account, to give Tabatchnick a check of $100,000 payable to JNT, with the understanding that he would have his money back in 24 to 48 hours or else he would cancel the check.
Although Tabatchnick secured the check to placate the NASD, he apparently decided that his efforts to salvage JNT would be futile. He did not show the check to NASD officials, nor did he place it in the firm account. Tabatchnick informed the NASD staff supervisor that he had a cheek “which could be contributed to JNT but that the check was not going to be put into JNT.” Instead, Tabatchnick tore the signature off the check and returned it to the brokerage firm which had issued it.
Plaintiff’s ninth cause of action alleges that Tabatchnick’s return of the check constituted a voidable preference under section 60 of the Bankruptcy Act, 11 U.S.C. § 96, which defines a preference as a transfer of the debtor’s property “to or for the benefit of a creditor for or on account of an antecedent debt”. Id. § 96(a)(1). The district court held in the first instance that it was for the jury to determine whether Tabatch-nick’s return of the check constituted such a voidable preference. When the jury concluded that it did, the district judge reconsidered his earlier decision and directed that judgment notwithstanding the verdict be entered in favor of the defendants on the ninth cause of action. We believe that this latter determination was the correct one.
In order for the trustee to establish a preferential transfer, he had to show that the transferee was a creditor of the bankrupt, i. e., the owner of a demand or claim provable in bankruptcy. Richardson v. Shaw, 209 U.S. 365, 381, 28 S.Ct. 512, 52 L.Ed. 835 (1908); 11 U.S.C. § 1(11); 3 Collier on Bankruptcy § 60, at 834 (14th ed. 1977). For a debt to exist, something must be owed to the creditor. Zwick v. Freeman, 373 F.2d 110, 116 (2d Cir.), cert. denied, 389 U.S. 835, 88 S.Ct. 43, 19 L.Ed.2d 96 (1967). Moreover, the transferee must have become a creditor prior to the transfer, or it would not have been made “for or on account of an antecedent debt.” 4 Remington on Bankruptcy § 1660, at 203 (5th ed. 1957). “Preference implies paying or securing a pre-existing debt of the person preferred.” Dean v. Davis, 242 U.S. 438, 443, 37 S.Ct. 130, 131, 61 L.Ed. 419 (1917).
We agree with the district judge that JNT owed no antecedent debt to Emmer which he, as a creditor, could have proven in JNT’s bankruptcy proceedings. The check itself was merely a request to the drawee bank to pay JNT $100,000; it did not operate as an assignment of these funds to JNT. Garden Check Cashing Service, Inc. v. First National City Bank, 25 A.D.2d 137, 141-42, 267 N.Y.S.2d 698, aff’d, 18 N.Y.2d 941, 277 N.Y.S.2d 141, 223 N.E.2d 566 (1966). Prior to the cashing of the check, there was simply no obligation owing to Emmer for which he could have had a recovery.
The judgment dismissing plaintiff’s ninth cause of action is affirmed.
III
Damages and Setoff
Both defendants challenge the right of the district court to award damages against them. Emmer contends that plaintiff’s sole remedy against him was the return of the JNT securities. Tabatchnick asserts that section 720 of the New York Business Corporation Law does not authorize the recovery of money damages.
Emmer also contends that he was entitled to recover damages from plaintiff for plaintiff’s refusal to return securities owned by Emmer but in plaintiff's possession. Ta-batchnick argues that he was entitled to a setoff against plaintiff’s recovery of $50,-000, the amount of his unrepaid loan to JNT.
(D
Under the circumstances of this case, if the trustee is entitled to recover for *1050 a fraudulent transfer of JNT securities to Emmer, that recovery is not limited to a return of the securities. The remedial provisions of sections 67 and 70 of the Bankruptcy Act are somewhat ambiguous. Section 67(d)(6), 11 U.S.C. § 107(d)(6), provides that a fraudulent transfer “shall be null and void against the trustee.” Section 70(e)(2), 11 U.S.C. § 110(e)(2), on the other hand, provides that the trustee “shall reclaim and recover such property or collect its value.” We need not decide whether these sections, read together, give the trustee the option in every case to seek either recovery of the property or its value. But see Schainman v. Dean, 24 F.2d 475, 476 (9th Cir. 1928). Where, as here, the transferee has refused to return the securities upon the trustee’s request and they have subsequently severely depreciated in value, if such refusal was wrongful, the district court could permit monetary recovery.
(2)
Section 720 of the New York Business Corporation Law provides that an action may be brought against a director to compel him to account for the violation of his duties in the management and disposition of corporate assets. Relying upon Ali Baba Creations, Inc. v. Congress Textile Printers, Inc., 41 A.D.2d 924, 343 N.Y.S.2d 712 (1973), Tabatchnick now contends, apparently for the first time, that section 720 may not be used, as here, to obtain a money judgment in an action at law for damages.
Because we are remanding for a new trial, this issue becomes largely academic. Plaintiff is not seeking to recover any ill-gotten gains in the hands of Tabatchnick but only the damages which JNT sustained as a result of Tabatchnick’s allegedly wrongful conduct. The New York Court of Appeals has held that section 720 “is broad and covers every form of waste of assets and violation of duty whether as a result of intention, negligence, or predatory acquisition.” Rapoport v. Schneider, 29 N.Y.2d 396, 400, 328 N.Y.S.2d 431, 435, 278 N.E.2d 642, 645 (1972). Whether pursuit of relief in the instant case is labeled as an action for an accounting or a suit for damages is of. little consequence. Amending the ad damnum clause in plaintiff’s second cause of action to make it a demand that Tabatchnick account for JNT’s damages will cause no change of substance, nor will it prejudice Tabatchnick in any manner. See Bush v. Masiello, 55 F.R.D. 72, 78, 79 (S.D.N.Y.1972). Such amendment may be had.
(3)
The question whether Emmer should be entitled to a monetary recovery for the trustee’s allegedly wrongful withholding of stock owned by Emmer is an important one because of the securities’ sharp decline in value. In his counterclaim, Emmer alleged that he owned certain securities which were held for his account by JNT and that the trustee had taken possession of them. These allegations were admitted by the trustee, who contended that section 57(g) of the Bankruptcy Act, 11 U.S.C. § 93(g), authorized him to retain possession.
Section 57(g) provides that the claim of a creditor who has received a voidable preference should not be allowed unless he surrenders the preference. Relying upon this provision, the district court held that the trustee could retain Emmer’s stock until any judgment against Emmer was satisfied, at which time it would be returned. Although the facts were not fully developed on the trial, this holding may have been error.
Section 6(c)(2)(A)(iii) of the Securities Investors Protection Act, 15 U.S.C. 78fff(c)(2) (A)(iii), as it existed prior to the 1978 amendments, defined “cash customer” in much the same language as did its predecessor, section 60(e)(1) of the Bankruptcy Act, 11 U.S.C. § 96(e)(1), i. e., a customer entitled to immediate possession of his securities without the payment of any sum to the broker. Further tracking the language of section 60(e), the Securities Investors Protection Act provided that all property held by a stockbroker for the account of customers, except cash customers who were able to specifically identify their property, should constitute a separate fund for the benefit of the customers as a separate class of creditors. Section 6(c)(2)(B). The trustee was directed to return specifically identifiable property to the customers entitled thereto, section 6(c)(2)(C), and no provision *1051 was made for an offset based upon a general indebtedness. The statute provided instead that one might be a cash customer as to certain securities and not to as to others. Section 6(c)(2)(A)(iii).
Our examination of section 60(e) and the Securities Investors Protection Act as originally enacted satisfies us that Congress did not intend in either statute for cash customers with specifically identifiable securities to be treated as creditors with regard to those securities. See Tepper v. Chichester, 285 F.2d 309, 312 (9th Cir. 1961); Cf. 15 U.S.C.A. § 78fff—2(c)(2) (Supp.1979). To the extent, if any, that Emmer was such a cash customer of JNT, he should not have been treated as a creditor subject to the provisions of section 57(g). Upon retrial, the district court should determine Emmer’s rights and remedies on that basis. Other than as expressed herein, we have no present opinion on those issues.
(4)
If, on retrial, Tabatchnick is found to have breached his fiduciary duties to JNT through the transfer of its securities to Emmer, he will not be entitled to set off the $50,000 owed to him by the corporation. See Bayliss v. Rood, 424 F.2d 142, 147 (4th Cir. 1970); Ritter v. Mountain Camp Holding Corp., 252 A.D. 602, 604-5, 299 N.Y.S. 876 (1937); 4 Collier on Bankruptcy § 68.04[2.1], at 872-77 (14th ed. 1978).
IV
Other Contentions of the Parties
The only other claim of the parties meriting comment is Emmer’s claim that the trial court was without jurisdiction. The complaint alleged violations of the Securities Exchange Act and tortious conduct in New York State under the pendent state claims. The district court did not err in holding that jurisdiction existed. See 15 U.S.C. § 78aa; N.Y.Civ.Prac.Law and Rules § 302(a); Mariash v. Morrill, 496 F.2d 1138, 1142-43 (2d Cir. 1974); Neilson v. Sal Martorano, Inc., 36 A.D.2d 625, 626, 319 N.Y. S.2d 480 (1971); Francis I. DuPont & Co. v. Chelednik, 69 Misc.2d 362, 363, 330 N.Y.S.2d 149 (1971).
The judgment appealed from is affirmed in part and reversed and remanded in part in accordance with the foregoing provisions of this opinion. Tabatchnick and Emmer will be allowed fifty percent of their costs and disbursements on this appeal. This amount will adequately compensate them for the cost of presenting their nonfrivolous and nonrepetitive arguments to this Court.

. Section 67(d)(2)(a) provides that a transfer by a debtor within one year of filing for bankruptcy is fraudulent as to existing creditors if made without fair consideration and the debtor is or will thereby be rendered insolvent.

. Although the complaint contained nine causes of action, plaintiff waived six of them prior to trial and proceeded to trial only on the second, fourth, and ninth claims for relief.

. The second cause of action alleges a claim under section 720 of the New York Business Corporation Law which authorizes actions against corporate directors for breach of their fiduciary duties. Because Emmer was not a director, plaintiff agreed at trial to limit this claim for relief to Tabatchnick. Although the judgment against Tabatchnick on the second cause of action resulted from a directed verdict at the close of trial, the directed verdict was based upon the prior grant of summary judgment on the fourth cause of action alleging a violation of section 67(d). Reversal of plaintiffs recovery under the fourth cause of action therefore requires reversal of his recovery under the second.

. The district court correctly held that Tabatch-nick did not hold or receive JNT’s transferred portfolio securities within the meaning of the bankruptcy law. 11 U.S.C. § 110(e)(2). See Jackson v. Star Sprinkler Corp., 575 F.2d 1223, 1234 (8th Cir. 1978); Elliott v. Glushon, 390 F.2d 514 (9th Cir. 1967). It did not err, therefore, in concluding that only Emmer might be held liable under the fourth cause of action alleging a violation of section 67(d).