In re ST. GEORGE ISLAND, LTD., Debtor.

ST. GEORGE ISLAND, LTD., Plaintiff,

v.

Richard L. PELHAM, Defendant.

Bankruptcy No. 87–07193.
Adv. No. 88–9136.

United States Bankruptcy Court,
N.D. Florida,
Tallahassee Division.

Aug. 1, 1991.

———

John Barley, Tallahassee, Fla., for plaintiff.

John C. Lovett, Tallahassee, Fla., for defendant.

William Miller, Tallahassee, Fla., trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for trial before this Court on February 13, 1991 and was concluded on March 5, 1991. The then Chapter 11 debtor, St. George Island, Ltd., filed a three count complaint on November 10, 1988, against the defendant, Richard L. Pelham and others. The Court, on March 20, 1989, dismissed Counts I and II. The remaining count is only against Pelham and seeks to avoid a fraudulent transfer pursuant to Bankruptcy Code § 548. Having considered the evidence presented, the arguments of counsel, and the filed memoranda of law, we make the following findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

St. George Island, Ltd. ("SGI") is a Florida limited partnership that was involved in the business of developing and marketing real estate in Franklin County, Florida. At the time of its Chapter 11 petition, John Stocks was its general partner. Richard Pelham is an individual also involved in the development of real estate. SGI filed for protection under Chapter 11 of the Bankruptcy Code on July 10, 1987. In the years proceeding the filing for bankruptcy, SGI engaged in transactions resulting in assignments of notes and mortgages to other parties including the defendant, Pelham. Two assignments to Pelham occurred on August 7, 1986, less than one year prior to the debtor filing for bankruptcy. It is these assignments that are the subject of this adversary proceeding.

In the transactions leading up to the subject assignments, SGI and High Tide Enterprises, a Florida general partnership, on October 15, 1984, entered into a sale and purchase of the Pelican Point subdivision, whereby SGI agreed to sell the property to High Tide for $400,000. Pelican Point is a 23 acre tract of land located in Franklin County, Florida. As consideration for this

transaction, High Tide executed and delivered to SGI a purchase money note in the amount of $400,000 which was secured by a purchase money mortgage on the real estate ("High Tide Note & Mortgage"). Incorporated into the note and mortgage was a collateral agreement which provided that, upon payment by High Tide to SGI of the sum stipulated to be applicable to each lot in Pelican Point, SGI would release its lien on that lot.

On or about October 25, 1984, High Tide sold Lots 4 and 14 in Pelican Point to Nancy W. Bloom. At closing, Bloom executed and delivered to High Tide a purchase money note and mortgage for each lot ("Bloom Notes & Mortgages"). High Tide then assigned the Bloom Notes & Mortgages to SGI in exchange for SGI's release of the liens on Lot 4 and 14.

Thereafter, in February, 1985, High Tide obtained a development loan from Sun Bank in the amount of $140,000. This loan was secured by a mortgage on the Pelican Point property, except for lots 4, 14 and 26. SGI agreed to subordinate its mortgage on Pelican Point to this mortgage, thereby putting Sun Bank in a first mortgage position on that property.

A month later, in March, 1985, High Tide sold Lot 26 in the subdivision to R. Dwayne Odle and Yean W. Chooi. Odle and Chooi executed and delivered to High Tide a Purchase Money Note and Mortgage ("Odle Note & Mortgage"). High Tide, as in the previous instance, assigned the note and mortgage to SGI in exchange for SGI's release of lien on Lot 26.

In March 1986, SGI gave to Redden, Mills & Clark ("RMC"), an Alabama law firm, a collateral assignment which conveyed to RMC a portion of SGI's interest in the High Tide Note & Mortgage as security for a $65,000 promissory note which was simultaneously given to RMC by SGI's general partner, John R. Stocks.

In August 1986, SGI assigned the High Tide Note & Mortgage to Pelham, subject to the RMC assignment. The result of this assignment placed Pelham in a third mortgage position, after Sun Bank and RMC, with respect to the Pelican Point property. On the same day, SGI also assigned to Pelham SGI's interest in the Bloom Notes & Mortgages and the Odle Note & Mortgage. Those mortgages are first mortgages on the respective properties. It is these assignments which SGI alleges constitute fraudulent transfers.

SGI contends that these assignments were made pursuant to an agreement whereby Pelham would transfer to SGI real property in the Majestic Oaks subdivision, a high priced neighborhood in Tallahassee, Florida, and would build a home on that property that would have a market value of approximately $461,000. Once complete, SGI was to lease the home to Stocks and his wife as their residence. There is no question that Pelham never conveyed the real property to SGI or Stocks. SGI further contends that Pelham never conveyed anything of value in consideration of the assignments. Pelham, on the other hand, asserts that the assignments from SGI were in exchange for the satisfaction of obligations totalling $187,694 owed by John Stocks to Pelham.

At trial, Pelham introduced a hand written worksheet, which indicates it was prepared on August 14, 1989, listing the obligations which Pelham asserts were satisfied by the assignment of the notes and mortgages. A typed worksheet, prepared on September 11, 1989, introduced by SGI, is similar but clearer than the hand written worksheet. The latter worksheet indicates the dates and outstanding amounts and to what they are attributed as follows:

4-23-86

| | |
|---|---:|
| 1270 High Road (7 months @ 375) | $2,625.00 |
| 2603 & 2607 Clara Kee | 1,704.69 |
| Refrigerators | 915.84 |
| Maintenance & Repairs | 1,372.88 |
| Springhill Warehouse (unpaid rent) | 9,756.52 |

'12-31-85

| | |
|---|---:|
| Airplane—John's ½ of unpaid expenses and debt service | 22,481.25 |
| Engine Replacement ($23,189.68 divided by 2) | 11,594.86 |
| Assumption of John R. Stocks/Destin Savings Loan (7/2/86) | 125,000.00 |
| Accrued interest from 9/6/85 | 12,243.15 |
| TOTAL debt extinguished as consideration for High Tide Mortgage Assignments | 187,694.19 |

During the trial SGI put on evidence to refute each of these charges. Its evidence sought to show that neither SGI nor John Stocks are liable for these alleged obligations. Stocks testified that he paid Pelham one year in advance for the High Road apartment, that he deeded his interest in the plane to Pelham, and that Pelham assumed the liability on the Destin note. Stocks' sons and daughter-in-law testified that they lived in the Clara Kee apartments and that John Stocks did not have any responsibility for the apartments. SGI presented further evidence that neither it nor Stocks were responsible for the Springhill warehouse, but that Gold Leaf, a related Stocks entity, was the lessee of the warehouse.

But for the worksheets, generated more than nine months after the complaint against him was filed, Pelham did not produce any documentary evidence, such as agreements, notes, billing statements, or ledgers, to show that these obligations existed at the time of the assignments. Additionally, some of these alleged obligations were incurred by parties other than John Stocks. Of the remaining obligations, Stocks hotly contests any obligation he may have. Further, there has been no showing that SGI had any responsibility for these debts.

SGI's assertion that the assignments were made in contemplation of the building of a home on a lot is butressed by a letter from John Stocks to Richard Pelham, dated January 27, 1987, a mere five months after the assignments. In that letter, Stocks wrote:

My ultimate concern at this point is to obtain an assignment of the above referenced mortgages. As you recall, I assigned these mortgages to you sometime ago in order to effectuate the construction of a house for Faye. Since that time Faye has decided that she no longer is interested in building the house. At the time of the assignment, it was my understanding that in the event the construction of the house did not take place, then you would reassign those mortgages back to me.

There is no evidence to suggest that Pelham ever responded to Stocks request.

The weight of the evidence would appear to support SGI's version of the facts. However, reconciliation of the facts is not necessary to the resolution of this case in view of the legal principles which apply even if Pelham's version of the facts are accepted *in toto*.

The issue we must decide is whether any of the facts alleged would establish that SGI received reasonably equivalent consideration for the assignments made to Pelham. If sufficient consideration was not received by SGI then the assignments made to Pelham must be avoided. Bankruptcy Code § 548 allows a trustee (or debtor-in-possession) to

Avoid any transfer of an interest of the debtor in a property or any obligation incurred by the debtor, that was made or incurred on or within one year of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonable equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548(a). The parties have stipulated that the assignment made by SGI to Pelham was within one (1) year of the filing of the petition and that SGI was insolvent on the date of the transfer. However, they do not agree that the debtor received less than reasonable equivalent value in exchange for such transfer. Pelham contends that SGI received $187,694 in the form of a satisfaction of obligations of John Stocks and that such satisfaction was reasonably equivalent value for the assignments. However, John Stocks is not the debtor in this case.

Even if we were to accept all Pelham's allegations as true, he would be required to show that the satisfaction of the debt of John Stocks constituted reasonably equivalent value to SGI. Absent such showing, the transfers must be avoided as fraudu-

lent pursuant to § 548. Pelham asserts that when a party receives, either directly or indirectly, value for a transfer, that party has received a benefit. He contends that the benefit which Stocks' received constituted either a direct or an indirect benefit to SGI. Therefore, SGI received adequate consideration for the assignments. For support of this proposition, Pelham cites to *Johnson v. First National Bank*, 81 B.R. 87 (Bankr.N.D.Fla.1987) and *Rubin v. Manufacturer's Hanover Trust Co.*, 661 F.2d 979 (2nd Cir.1981).

"In general, transfers made solely for the benefit of third parties do not constitute 'reasonably equivalent value' for purposes of § 548." *In re Pembroke Development Corp.*, 124 B.R. 398, 400 (Bkrtcy. S.D.Fla.1991). However, this Court, in *Johnson*, recognized that "a debtor need not benefit directly in order to receive reasonably equivalent value for a transfer. He may benefit indirectly through benefit to a third person." *Johnson* 81 B.R. at 88, citing, *Williams Twin City Co.*, 251 F.2d 678, 681 (9th Cir.1958), *Klein v. Tabatchnick*, 610 F.2d 1043, 1047 (2nd Cir.1979), *Rubin, supra* 661 F.2d 979, 991. "If the consideration given to a third person ultimately landed in the debtor's hands, or if the giving of the consideration to the third person otherwise confers an economic benefit upon the debtor, then the debtor's net worth has been preserved." *Rubin, Id.*

It is Pelham's argument that when the general partner receives a benefit through forgiveness of debt, the partnership benefits by having a more solvent general partner. He reasons that reduction of the debt owed by Stocks to Pelham had the effect of increasing Stocks' net worth available to SGI to use to satisfy partnership debt since a general partner is liable for partnership obligations.

The relationship of a general partner and limited partnership, and the effect of a benefit to one or the other, may be compared to that of a corporate parent and a subsidiary, or a 100% shareholder and the corporation. In each case, when there is a benefit to the entity, the controlling party necessarily benefits through the enhancement of the value of the entity.

In *Johnson*, this Court examined the effect of a benefit to a corporation as it relates to its 100% shareholder. In that case, the shareholders guaranteed a note made by the corporation. As collateral, the shareholders gave the bank a mortgage on their personal residence. When the corporation defaulted on the loan, the bank instituted proceedings to foreclose the mortgage on the shareholder's residence. Prior to the foreclosure sale, the shareholders filed for protection under Chapter 11 of the Bankruptcy Code. Thereafter, they filed an adversary proceeding seeking to avoid as a fraudulent transfer the mortgage given to the bank on the personal residence.

In that case, we first examined whether the shareholders received reasonably equivalent value in exchange for the transfer of the mortgage on their home. The debtors, the shareholders, argued that they did not receive any value since it was the corporation that received the loan proceeds. We found that a loan to a subsidiary corporation will almost always confer a benefit on the parent or stockholder of the corporation since they are the indirect beneficiaries of anything of value coming to the corporation.

However, in the case at hand, we have a situation where the general partner of the limited partnership may have received the value. The question becomes whether a value to the general partner necessarily confers a benefit on the limited partnership. Following the defendant's argument, any benefit to a parent, or in this case, a general partner, would flow to the subsidiary, or limited partnership. While it may be possible that the subsidiary does receive a benefit by an action that has benefitted the parent, such benefit cannot be automatically inferred.

In *In re Duque Rodriguez*, 77 B.R. 944 (Bankr.S.D.Fla.1987), the court examined whether a transfer of $176,410 during the year prior to the debtor's bankruptcy was avoidable under § 548. There, the debtor corporation made payments to a bank for loans for which the 100% shareholder was

obligated. The corporation was not obligated either as the borrower of guarantor of the loans. The bank argued that due to the relationship between the principal and the corporation the corporation received a reasonably equivalent value for the transfer. The court cited *Rubin* and stated that any indirect benefit "must be such that the corporation's net worth is unaffected by the corporate transfer". *Id.* at 946. It went on to find that the transfers made by the corporation for the benefit of its principal were not applied to any debt of any entity related to the corporation and therefore the corporation did not receive any value for such exchange of the payments.

In this case, SGI transferred a $400,000 promissory note and three smaller notes and mortgages to Pelham. There can be no doubt that such transfers reduced the partnership's net worth. In exchange for this transfer, Pelham contends that he forgave Stocks' outstanding obligations to him. There has been no allegation, nor any showing, that SGI, in any way, was obligated under Stocks' alleged debts. If Pelham had obtained a judgment in the amount of the obligations he claims were owed by Stocks, he would not have had any recourse against SGI for those obligations. Further, Stocks January 27, 1987, letter gives strong support to the contention that the assignments were not for the alleged obligations, but were for a house and lot worth approximately $461,000, which were never received.

Pelham contends that Stocks' testimony at trial acknowledging that a benefit to him benefitted SGI and vice versa shows that the debt forgiveness did benefit SGI. Such a legal conclusion cannot be determined by a witness. The case law is clear that a transfer to a third party must confer an economic benefit on the debtor in order for there to be an exchange of reasonably equivalent value. There has been no showing that the purported satisfaction of Stocks's alleged obligations economically benefitted SGI. Considering the assignment to Pelham by SGI and the alleged settlement of Stocks debts to Pelham, it is clear that SGI's net worth has not been "unaffected by the ... transfer." There-

fore, we find that Pelham has failed to show that SGI received any consideration in exchange for the assignments of the notes and mortgages. Absent a showing of any transfer to SGI of value reasonably equivalent to the High Tide note and mortgage and the Bloom and Odle notes, the transfers made from SGI to Pelham must be avoided pursuant to § 548. A separate judgment will be entered forthwith.